298 So.2d 48

**John Arvell STOWE, alias**

**v.**

**STATE.**

**5 Div. 177.**

Court of Criminal Appeals of Alabama.

June 25, 1974.

Rehearing Denied July 16, 1974.

Benjamin E. Pool, Montgomery, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and Roger M. Monroe, Sp. Asst. Atty. Gen., Birmingham, for the State.

HARRIS, Judge.

Appellant was convicted of assault with intent to murder and sentenced to twenty years imprisonment in the penitentiary. He was represented at arraignment and trial by a court-appointed lawyer. He pleaded not guilty. New counsel was appointed to represent him on appeal.

On November 30, 1971, when the offense was committed the victim was a resident of Port Arthur, Texas. At the time of trial, he was living in Little Rock, Arkansas, where he was attending the Arkansas Institute for the Blind. He was completely blind and was learning the Braille system to read and write, and also how to use a cane to walk and otherwise care for himself.

The victim was a tank builder by trade and on November 29, 1971, he went to Chattanooga, Tennessee, to check with a business agent about available work. He was advised that there were two tank jobs in New Orleans and he could report for work there. He went to a local tavern in which there was a pool hall. The time was 5:00 P.M. He started drinking beer and playing pool. Appellant came in, challenged the table, and he and the victim played pool for thirty minutes during which time both were drinking beer. Some other men came in and wanted to play pool, and appellant and the victim teamed up as partners against the others and they continued to play for about an hour and a half. They continued to drink beer. During the games the victim told appellant that he was going to New Orleans for employment, and appellant asked him for a ride and the victim agreed to carry him. Appellant said he had to cash in a bus ticket and get his clothes.

The victim owned a 1961 white or light colored Volkswagon which was parked about a block away and near another tavern. He told appellant he would wait for him at the other place. The victim went to the other tavern and ordered a beer. A few minutes later appellant arrived with his clothes. It seems this was a "gay" tavern and they saw men dressed as girls and kissing their partners. They looked at some sexy magazines for a few minutes and went to the car. Appellant put his clothes on the victim's foot locker on the back seat and the victim drove from Chattanooga to Dalton, Georgia. They stopped at a tavern in Dalton that was about to close for the evening and appellant bought some beer to go and they headed to I–85 leading toward Montgomery.

The victim had a married daughter living near Chatsworth, Georgia, and he told appellant he wanted to visit her a few minutes. Just before getting to Chatsworth they stopped at a place and bought pickled wieners and pickled eggs, some more beer and a half pint of whisky. When they got to the victim's daughter's house both went in and talked to her and her husband some thirty minutes and then left. They stopped at a truck stop in Fairmont, Georgia, for gas and killed about thirty minutes. While at this place, appellant got two pills or capsules from a truck driver. He took·one pill and offered the other one to the victim who declined and appellant put that one in his shirt pocket. They got back on the highway and continued to drink the beer and whisky.

A short time later the victim got sleepy and appellant started driving. The victim went to sleep and waked up along the uncompleted section of I–85 and went back to sleep. He owned a .25 caliber automatic pistol which was in the door compartment on the driver's side. He was awakened by a loud explosion and immediately felt pain in the temple region of both sides of his skull and he was completely blind. He told appellant he was hurt and to get him some help. Appellant drove about a mile and stopped the car and got out and said something about going for help, but he never returned. Appellant abandoned this blind and helpless man on the emergency parking section of I–85. The victim felt the urge to go to the restroom and got out of the car and held on to the door as he an-

swered the call of nature. He felt blood on his face, nose, eyes and on his clothes. While he was in a squatting position two police officers of Opelika drove up and stopped behind the Volkswagon to investigate why the car was parked on the interstate. The victim related his story to them and they saw blood all over his face, his clothes and inside the car. The officers helped him to get his clothes back on and put him in the patrol car. One of the officers drove him to the Lee County Hospital and the other officer stayed with the Volkswagon to secure it. The time was now 4:30 A.M. on November 30, 1971. The place, Lee County, Alabama.

At 8:00 A.M. the captain of the Opelika Police Department came to the scene with a state investigator. A wrecker was called and the car was carried to Police Headquarters. The car keys were missing. Before the car was towed away, photographs were taken of the car and the scene. The captain searched the scene and a half mile of the highway in both directions in an endeavor to find a weapon but the search proved fruitless.

An assistant state toxicologist was called to inspect and examine the car at Police Headquarters. He found blood on the front interior of the car and removed a slug from inside the door on the passenger side. He identified the slug as being a .25 caliber bullet slug. He found a spent .25 caliber hull behind the passenger's seat and also found an unfired bullet which he likewise determined to be a .25 caliber. These items were received in evidence over the objections of appellant, as were the photographs of the car and the scene where the car was found.

The officers ascertained that appellant was in jail in Cleveland, Tennessee, and the District Attorney of Lee County, a state investigator, the Chief of Police of Opelika, and the Chief Deputy Sheriff of Lee County went to Cleveland and interviewed appellant. The officers gave him the *Miranda* rights and warnings and told him he was charged with assault with intent to murder in Lee County, Alabama. They related to him what the victim said about seing shot and appellant replied that the man was not telling the whole story. He told the officers that it was an accident but not altogether an accident. He asked the officers when he could get his clothes back that he left in the car. One of the officers said, "Well, you tell us what happened", and appellant said he did not want to go into any details until he talked to a lawyer. He further said he was in trouble in Tennessee and did not want to talk any further. The officers then terminated the interview. Appellant refused to return to Alabama voluntarily and had to be extradited.

Prior to trial a stipulation was entered into by and between the district attorney and counsel for appellant. This stipulation concerned the testimony of the attending physician who was absent from trial but if he were present would testify in substance as follows:

On the early morning hours of November 30, 1971, Dr. Webb treated Mr. Hugh McKinney, Jr., at the Lee County Hospital; that upon examining Mr. Hugh McKinney, Jr., he found two wounds in his head, the first wound being on the left side of his face, in the left temple immediately behind his left eye; that another wound was found on Mr. McKinney's right temple, immediately behind his right eye; and that upon further examination, he determined that a projectile had entered Mr. McKinney's left temple and passed through his head, coming out of his right temple; and at that time Mr. McKinney was permanently blind.

Appellant was the only witness in his behalf. His testimony corroborated that of the victim in every material respect except as to what occurred immediately before and at the time of the shooting.

According to appellant, when they were in the "gay" tavern in Chattanooga and were about to depart he overheard the victim say, "I'm going to break old John in on the way." Appellant said he told him, "Let

me tell you right now, I don't play that stuff", and he replied, "Well, don't get mad; I was just kidding."

When the victim was testifying, he was asked about the above statement on cross-examination and vehemently denied making any such statement.

Appellant further testified that the victim was not asleep when he was shot but that several times during the trip he would put his hands in appellant's lap and make improper advances to him and that the victim requested that appellant pull the car over and stop. Appellant said he rejected all of these proposals and kept driving. He said that finally the victim grabbed his privates and would not let go. It was at this time that appellant reached in the side door on the driver's side and got the pistol and struck at the victim and the gun went off and hit the victim; that he did not realize that the victim was hurt bad and he braked the car and got out. A truck approached and stopped and he told the driver that he had some trouble and wanted a ride to Montgomery and the driver agreed. He claimed he did not know what happened to the pistol after the shooting and did not know what happened to the car keys.

On cross-examination the victim was asked about these improper advances and replied, "No, sir, I most certainly did not", and further said, "No, sir, I did not and I resent those kind of statements."

At the conclusion of the state's case appellant made a motion to exclude the evidence on the ground that the evidence was insufficient to connect the defendant with a crime alleged to have been committed in Lee County, Alabama. The trial court overruled and denied the motion to exclude.

■ If there is a reasonable inference to prove the existence of the corpus delicti, the court should submit to the jury for consideration the question of the sufficiency and the weight of the evidence tending to support that inference. Hines v. State, 260 Ala. 668, 72 So.2d 296.

■ The victim's testimony concerning the circumstances of the shooting was certainly a reasonable inference to prove the existence of the corpus delicti. The voluntary statement that appellant made to the officers at the jail in Cleveland, Tennessee, concerning the clothes he left in the car was ample evidence to connect him with the crime. The case was properly submitted to the jury.

■ There was no error in the admission of the photographs in evidence. The rule is stated in McKee v. State, 253 Ala. 235, 44 So.2d 781, as follows:

"* * * The art of photography is generally relied on for depicting the resemblance of persons, objects, things and places and when verified by evidence, extrinsic of the photographs, going to show that they correctly depict the thing or object *at the time they were taken*, photographs are admissible in evidence in a criminal prosecution, if they tend to shed light on, strengthen or illustrate the truth of other testimony offered by the prosecution. * * *" (emphasis supplied)

We have carefully examined the record for errors injuriously affecting the substantial rights of appellant and have found none. We conclude that the case is due to be affirmed.

Affirmed.

ALMON, TYSON and DeCARLO, JJ., concur.

CATES, P. J., not sitting.