HARRIS, Judge.
Appellant was convicted of murder in the first degree and the jury fixed his punishment at imprisonment in the penitentiary for life. He was sentenced in accordance with the verdict of the jury. At arraignment, with his counsel present, he pleaded not guilty and not guilty by reason of insantiy. After sentence was imposed, he gave notice of appeal. He was found to be indigent and a free transcript was furnished him. Trial counsel was appointed to represent him on appeal.
The State’s evidence is not disputed. Appellant did not testify nor was any evidence offered in his behalf.
This case arose out of the robbery of Delchamps store on South Court Street in Montgomery Alabama, on the night of October 9, 1974, in which Crawford Herring, the grocery manager, was killed by a shotgun blast. He died instantly.
According to the testimony of Mrs. Daisy Johnson, who was operating a cash register on the night of the robbery, several men wearing ski masks and long overcoats entered the store at about twenty minutes to 9 o’clock. Several of the men had sawed-off shotguns and one had a pistol. She stated there were at least four men of various sizes. The tall man came to the *169 cash register she was operating and said, “This is a robbery. Everyone lay on the floor.” There were seven employees in the store at this time including the deceased and there were two or three customers in the store also. The tall man was giving orders and the other men took up different positions in the store. The tall man ordered Mrs. Johnson to open the cash register and she did. The man with the pistol took the money from the cash register while the tall man held the gun on her. She was then ordered to lie on the floor and not to look at the men. The deceased was on the floor and the tall man told him to get up and open the other cash registers. The deceased got up and went to the number three cash register and opened it, but this register had been checked up and was empty. He then went to register number two and Mrs. Johnson heard someone say, “This white man thinks I am playing,” and she heard a shotgun blast. She heard one of the men say, “Let’s go,” and all the robbers ran out the front door.
After the robbers left, Mrs. Johnson got up and found the deceased lying on the floor in a puddle of blood near the number two cash register. The City police were called and arrived at the store within ten minutes. The deceased was still on the floor when the officers arrived, and a photograph of him was made. Mrs. Johnson identified the photograph of the deceased and it was introduced into evidence over the objection of appellant.
Mickey Hodge testified that he was employed by Delchamps on October 9, 1974, when the store was robbed and Mr. Herring was killed. He stated that at that time the store closed at 9 o'clock. That shortly before closing time he was in the wareroom located in the rear of the store behind swinging doors. He identified a photograph of the area of the store where he was working and this photograph was introduced into evidence without objection. He further testified that another employee of the store, Harold Henderson, was with him in the wareroom which was the stock room. He stated he was standing just opposite the door of the wareroom when a man came through the door and pointed a shotgun at him and Harold Henderson.
He said the man was wearing an overcoat that came down to his knees and had on a mask over his head that was blue or gray. That the man had a shotgun and the barrel had been sawed off and had a strap hanging from it. That the man just stood there and stared for a few minutes and then he walked back out the door and looked up front. He then came back through the door and asked if anyone was in the office and Hodge told him he didn’t think so, and Harold Henderson told him no one was up front. The man then pointed the shotgun at both of them and ordered them to lie on the floor and they complied with this order. The man then went back through the door and at this time they heard a loud noise which sounded like a shot. They stayed on the floor until they heard the shot and saw four or five men running from the store and they were all wearing ski masks, and they saw guns hanging off the back of their shoulders. These two employees then got up and locked the back door and walked to the front of the store. Mrs. Johnson told them they had been robbed and Mr. Herring had been shot and she picked up the telephone to call the police. Hodge got the keys from a cash register and locked the doors and started looking for Mr. Herring. He found him on the floor near the number two cash register and he was bleeding from his neck.
The testimony of Harold Henderson corroborated the testimony of Mickey Hodge. He also testified that the ski mask worn by the robber who came in the stock room was blue with a white trim. He said he saw this man’s hands and they were black. He further stated the robber was wearing a long dark trench coat that came down to his knees.
*170 Mr. Wayne Bullard, the Assistant Store Manager of Delchamps, testified that he was at home when the store was robbed. That he received a call from Mrs. Johnson and went to the store immediately and saw Crawford Herring lying on the floor by the number two cash register and he was dead. He inventoried the cash registers and determined that $630.00 was missing.
Mr. Richard A. Roper testified that he was employed by the State Department of Toxicology and Criminal Investigation and was stationed in Montgomery. Mr. Roper’s qualifications were admitted by defense counsel. He testified that he examined the body of Crawford Herring and gave his opinion as to the cause of death as follows:
“From my examination, I concluded that death resulted from central nervous system trauma and hemorrhage, associated with a single shotgun wound to the neck; within which the spinal cord, a major artery and a major vein were severed.”
Mr. Roper was shown State’s Exhibit Number 3, a photograph, and stated the photograph accurately depicted the scene of the shooting and the body of Crawford Herring. This photograph was introduced into evidence over appellant’s objection that it tended to inflame the minds of the jury.
Mr. Cecil H. Humphrey, a Detective with the Montgomery Police Department, testified that he made a search of the grounds in front of the store where the robbery and killing occurred and found four live twelve gauge shotgun shells and one twenty gauge spent shell. He stated that he put these items in a plastic bag, sealed the bag and turned it over to Mr. Charles Smith, a State Toxicologist. This witness further stated that he was downtown on October 12, 1974, and saw three men emerge from the WAPX radio station. He was shown a photograph of the three men emerging from the radio station and identified appellant as one of the three men and pointed to him in the courtroom. This photograph was admitted into evidence over appellant’s objections.
This Detective further testified that he went in the radio station and found three sawed-off shotguns. One was a twenty gauge gun and two were twelve guage guns. These guns were introduced into evidence over appellant’s objections. He delivered these guns to Mr. Charles Smith.
Mr. Smith testified as to his education, experience and qualifications. He stated that on October 9, 1974, he received a spent twenty gauge shell from Detective Humphrey and that later he received from Humphrey a twenty gauge pump shotgun. He test fired the gun and conducted a microscopic examination and comparison and rendered an opinion that the twenty gauge pump gun fired the spent twenty gauge shell that was found in front of Delchamps the night of the robbery and killing.
Mr. Roy Holton, Chief of Detectives of the Montgomery Police Department, testified that on Saturday, October 12, 1974, he saw three black males get out of an automobile that had been wrecked by a Montgomery policeman on his orders. He identified appellant as one of the three black males who came out of the automobile firing shotguns; He later saw the same trio emerge from the radio station. A photograph was taken of the men as they came out of the radio station and Chief Holton identified appellant in the photograph which was admitted into evidence over appellant’s objections.
Detective J. D. Foster testified that he obtained a search warrant to search the automobile in question. He stated that Chief Holton gave him the information which served as the basis for the affidavit leading to the issuance of the search warrant. Foster testified that he told Judge Piel who gave him the information.
Detective Humphrey was recalled and he testified that he searched the automobile in *171 question which was registered to one Arthur Lewis. He said his search revealed a blue and white ski mask in the automobile. Over appellant’s objection this ski mask was admitted into evidence as the State’s Exhibit 11.
Mrs. Ruby Berry testified on October 9, 1974, around 6:00 p. m. she went to the apartment of “Peter Rabbit” on Smiley Court to tell him that she had received a call from her son in New York and that he was in jail. “Peter Rabbit” was Arthur Lewis. She went to this apartment just to deliver a message from her son to Arthur Lewis. She stated that appellant was present during this conversation. Arthur Lewis told her to come back at 9 o’clock that night. She returned at 9 o’clock and appellant was again present. Mrs. Berry identified appellant from the photograph of the three black males taken downtown on October 12, 1974. Arthur Lewis gave her $250.00 and she was carried to the airport and went to New York where she saw her son. She returned the next day. She stated that she saw one sawed-off shotgun in the apartment on Smiley Court on the night of October 9,1974.
Alfonso Davis, a co-defendant, after being advised of his rights not to testify elected to do so. He testified that on October 9, 1974, on direct orders from Arthur Lewis, he and Charles Williams went to Conway Lumber Company and purchased six ski masks. He identified the ski mask marked State’s Exhibit 11 as one of the type they purchased. They returned to Arthur Lewis’ apartment with the six ski masks and appellant was present. Lewis told them the ski masks would be worn in the Delchamps robbery. Appellant had a sawed-off twelve gauge shotgun. Alfonso Davis and Charles Williams went in one car. Reginald Robinson, Julian Davis, Arthur Lewis and Amos Williams went in Lewis’ car. They parked their cars on Sayre Street behind Delchamps. Alfonso Davis and Charles Williams were posted as look-out men with orders from Lewis to kill any policeman who might come to the store. The others, including appellant, entered Delchamps store. Alfonso Davis stated he heard a shot and saw the four men run out the store.
Charles Williams, another co-defendant, after being advised of his rights also elected to testify. He stated he went with Alfonso Davis to buy the ski masks. He said State’s Exhibit 11 was one of those purchased. He also testified about the commission of the Delchamps robbery and murder and positively identified appellant as one of the participants.
The affidavit and search warrant were brought to Court and read by the trial judge and the attorneys involved in the trial of the case. The Court ruled that the affidavit and search warrant were constitutionally valid but he held that the affidavit and search warrant would not be submitted to the jury. This action of the trial court was proper as there was some language in the affidavit that referred to the killing of a retired police officer on Dexter Avenue on October 12, 1974, by one of the trio who took refuge in the WAPX radio station.
The search warrant lead to the discovery of a ski mask precisely as described by one of the employees of Delchamps and fully corroborated the testimony of Alfonso Davis and Charles Williams, co-defendants, who purchased the ski masks on direct orders of Arthur Lewis which were to be used in the robbery of Delchamps. This ski mask definitely connected appellant and the other five men to the robbery of Del-champs and the murder that was committed during the robbery.
In the case of Brooks v. United States, 416 F.2d 1044, the Fifth Circuit Court of Appeals held that local law enforcement officers participating in a common investigation are reliable informants. The ski mask was properly admitted into evidence. Thus, the affidavit in the *172 present case more than met the requirements of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and related cases.
Appellant complains that the trial court erred in admitting into evidence the photographs of the deceased as they tended to inflame the minds of the jury. We do not agree with this contention.
In Snow v. State, 50 Ala.App. 381, 279 So.2d 552, this Court held:
“There was no error in admitting photographs of the deceased and of the locus in quo where the proper predicate was laid. It has been held many times that gruesomeness is not ground for excluding evidence consisting of photographs if it has a reasonable tendency to prove some material fact in issue or shed some light upon some material inquiry, and if it illuminates the issues in any way, even though possessing a tendency to inflame the minds of the jury. McKee v. State, 33 Ala.App. 171, 31 So.2d 656; Grissett v. State, 241 Ala. 343, 2 So.2d 399; Rowe v. State, 243 Ala. 618, 11 So.2d 749. Such photographs are admissible as shedding light upon the character and location of the wounds on the body of the deceased though they constitute cumulative evidence upon a matter not disputed. Wilson v. State, 31 Ala.App. 21, 11 So.2d 563; Weems v. State, 222 Ala. 346, 132 So. 711; Hyche v. State, 22 Ala.App. 176, 113 So. 644; Pierce v. State, 28 Ala.App. 40, 178 So. 248.”
To the same effect are the holdings in the cases of Douglas v. State, 50 Ala.App. 602, 281 So.2d 652; Stowe v. State, 53 Ala.App. 118, 298 So.2d 48, and Hardy v. State, 53 Ala.App. 75, 297 So.2d 399.
In Stokley v. State, 254 Ala. 534, 49 So.2d 284, the Supreme Court said:
“It is well established that when, by prearrangement or on the spur of the moment, two or more persons enter upon a common enterprise or adventure and a criminal offense is contemplated, then each is a conspirator, and if the purpose is carried out, each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist the other in the perpetration or commission of the offense, is a guilty participant, and in the eye of the law is equally guilty with the one who does the act. Such community of purpose or conspiracy need not be proved by positive testimony. It rarely is so proved. The jury is to determine whether it exists, and the extent of it, from the conduct of the parties and all the testimony in the case. Morris v. State, 146 Ala. 66, 41 So. 274, and cases cited; Jones v. State, 174 Ala. 53, 37 So. 31; Teague v. State, 245 Ala. 339, 16 So.2d 877.
“When two or more persons enter upon an unlawful purpose, with a common intent to aid and encourage each other in anything within their common design, they are each responsible, civilly and criminally, for everything which may consequently and subsequently result from such unlawful purpose, whether specifically contemplated or not. Jones v. State, supra; Jolly v. State, supra [94 Ala. 19, 10 So. 606]; Tanner v. State, 92 Ala. 1, 9 So. 613.”
A careful search of the record fails to reveal any errors injuriously affecting the substantial rights of appellant. Accordingly the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.