Appellant was indicted for the November 26, 1981, first degree robbery of taxi cab driver Robert Woods at Billy's Trailer Park in Dothan. After a three-day trial, he was found guilty as charged. Ala. Code § 13A-8-41 (1975). Appellant waived preparation of a presentence investigation and was sentenced, as an habitual offender, to life imprisonment. From that conviction he now appeals in forma pauperis.
Appellant raises several issues on appeal. However, his major contention centers upon the legality of the search of his residence and seizure of property therein. Appellant filed a motion to suppress the seized evidence and a pretrial hearing was held upon such. Appellant offered the affidavit[1] and search warrant as evidence as well as called the affiant and victim as witnesses on his behalf.
In order to better harmonize appellant's arguments against the various portions of the affidavit with the evidence presented, we will summarize the evidence presented at the hearing as well as at trial pertinent to each of the five paragraphs separately.
Nothing was presented by appellant or the state to contradict or verify the first paragraph of the affidavit. It forms no basis for a finding of probable cause and thus is of little importance in a determination thereof.
The second paragraph is a summary of the incident as told by the victim to the affiant, Dothan Police Investigator Jackie Mendheim. The first one-half of it is a brief narration of the facts surrounding the robbery. It does not provide any basis for a finding of probable cause. The following two sentences recite the description given by the victim to Mendheim at the hospital on November 28. Woods's testimony at the hearing confirmed the accuracy of the description contained in the affidavit and the fact that the robber had a pistol. Woods did not testify to the pistol's caliber or color or as to the height or build of the robber. He could not recall giving Mendheim a description of the robber's clothing and did not verify the description thereof in the affidavit. Woods did not know if the robber had come out of trailer 119, as he had approached his taxi from the rear. Consequently, he would only testify as to the general area from which the robber came.
Mendheim testified that he received descriptions of appellant from other unnamed individuals which indicated that appellant was tall and slender. His skin tone was described by these individuals only as "black." He stated that through his investigation he learned that appellant resided in trailer 119, although such was not recited in the affidavit. The statements concerning appellant's injuries were Mendheim's conclusions based upon his observations of Woods. They do not provide any foundation for a finding of probable cause.
Trace Hamlin[2] testified that he accompanied the police to the scene of the robbery and was present when Woods was asked to describe his assailant. Hamlin testified that Woods described the robber as a white male wearing a cowboy hat. Hamlin thought Woods stated that he had been beaten with a tire tool, as he assisted the police in searching for one.
A comprehensive review of the second paragraph reveals that the only information contained therein which would assist the issuing judge in determining whether probable cause existed to issue the search warrant was the general description of the robber. With Woods being unable to identify his assailant, his description acquired more importance. Mendheim verified Woods's description, but the confirmation was more *Page 1141 
vague and general than that stated by Woods. Further, the source of such was not revealed.
The third paragraph consists of two sentences, the latter being concerned with the verification of Woods's description of the robber and identification of such as appellant, heretofore discussed. The first sentence contains multiple hearsay statements originating from a tenant at the trailer park, later identified as Wayne Kelly. Kelly informed the trailer park owner, Billy Parrish, that appellant had come to his trailer, number 114, apparently to call a taxi. However, no time frame for appellant's action was stated and none can be found in the record. Parrish then passed this information on to Lieutenant Locke, who in turn relayed it to Mendheim.
Mendheim testified that prior to the issuance of the search warrant, he talked with Kelly in an attempt to verify the information he had received. Kelly refused to verify it and was uncooperative. He stated that he did not want to get involved. Neither Kelly, Parrish, nor Locke testified at the hearing or trial to confirm the accuracy of the information contained in the third paragraph. Furthermore, at trial, the state stipulated that if Kelly was called to testify he would deny making the statement attributed to him.
Paragraph four also contains multiple hearsay statements. An individual later identified as Florida Corrections employee Freddie Jones called Locke and told him of appellant's whereabouts. He also relayed information he had received from a girl named Beverly, but later identified as Shirley Harris. Harris told Jones that appellant had told her that he had beaten a man in Dothan and thought that he had died.
Mendheim admitted not corroborating any of the above information until after issuance of the search warrant. In doing such, he only interviewed Jones. At trial Jones verified calling the Dothan Police Department at appellant's request. However, he did not confirm the substance of his conversation with Locke as recited in Mendheim's affidavit. Jones did testify that appellant came to his house during the early morning hours of November 26. He noticed blood on appellant's coat sleeves and blood and scratches on one of his hands. Appellant explained that such was a result of "some in-law trouble, a guy was after him." Jones gave appellant a shirt to change into. Appellant spent the night at Jones's house and left the next morning. He returned a couple of days later. At that time appellant asked him to call the Dothan Police to inquire if anyone had been mugged at Billy's Trailer Park. After calling, Jones told appellant that such had occurred and that appellant was suspected of doing it. Appellant replied that "that's what he was accused of." Afterwards, appellant left Jones's house only to return around December 1. He stayed only for a short time before leaving. Jones was not called as a witness at the suppression hearing.
Harris, who testified only at trial, stated that on November 28 appellant told her "that he had been in a fight with his relatives." He also told her "that he thought he had been accused" of beating a man in Dothan "but, he didn't know for sure." Harris stated that she carried some clothes for appellant to Malone, Florida, apparently to Jones's residence. Consequently, Harris, to some extent, contradicted the statement attributed to her in the affidavit.
Mendheim initially testified at the suppression hearing that he had no knowledge of the information contained in the last paragraph of his affidavit. At trial, however, Mendheim stated that he had made a mistake at the hearing, and had personally contacted Riley. A close reading of this paragraph reveals that it adds nothing to support a finding of probable cause. Whether Riley had seen appellant "since before Thanksgiving Day" does not support the conclusion that he robbed Woods, nor does it suggest any consciousness of guilt.
No oral testimony was made before the issuing judge in addition to the information in the affidavit. Thus, the trial court had before it only Mendheim's affidavit to determine *Page 1142 
whether probable cause existed for issuance of the search warrant.
Consequently, a review of the affidavit reveals that paragraphs one and five were of no assistance to the issuing judge in determining whether probable cause for issuance of the search warrant existed. Further, except for a few sentences of paragraph two, it likewise provided no foundation for a finding of probable cause. Thus, we are left with the information contained in paragraphs three and four, as well as a portion of the second paragraph to review.
In both the third and fourth paragraphs, Locke relayed information which he had received through telephone conversations with private citizens. These individuals had acquired all or part of their information from yet another named citizen. Consequently, the confidential police informant situation addressed by Aguilar v. Texas, 378 U.S. 108,84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and explicated by Spinelli v.United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637
(1969), was not present. Generally, in conjunction with a consideration of the Aguilar-Spinelli "two-prong test", law enforcement officers as well as named private citizens are not required, when assessing the information derived therefrom in light of the probable cause standard, to satisfy the "veracity prong" of Aguilar-Spinelli. Jaben v. United States,381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965); United States v.Ventresea, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965);Miller v. State, 440 So.2d 1127 (Ala.Cr.App. 1983); Mauldin v.State, 402 So.2d 1106 (Ala.Cr.App. 1981); Hadley v. State, 391 So.2d 158 (Ala.Cr.App.), cert. denied, 391 So.2d 162 (Ala. 1980); Richardson v. State, 376 So.2d 205 (Ala.Cr.App. 1978),aff'd, 376 So.2d 228 (Ala. 1979)[3]; Davis v. State,333 So.2d 168 (Ala.Cr.App. 1976); W. La Fave, 1 Search and Seizure, § 3.4 (a) (1978); Moylan, The Right of the People to be Secure, 252-56 (1976); Moylan, Hearsay And Probable Cause; An Aguilarand Spinelli Primer, 25 Mercer L.Rev. 741, 765-73 (1974).
However, a "basis of knowledge" for the information attributed to the citizen or policeman informer must be established. La Fave §§ 3.4 (b), 3.5 (a)(c), supra; see generally, Moylan, 25 Mercer L.Rev. 741, 772-73, supra. Consequently, we must test the information recited in the affidavit to determine some of the underlying circumstances from which the informant drew his conclusion. As stated inHadley, 391 So.2d at 162:
 "`The citizen informer rule does not dispense with all requirements of credibility, and an untested informant may not be accorded reliability where his statements lack specificity and evidence of personal knowledge. The reliability of a citizen informer should be evaluated from the nature of his report, his opportunity to see and hear the matter reported, and the extent to which it can be verified by independent police investigation.'" (Citations omitted).
We have no problem in finding a sufficient basis of knowledge for Woods's description of the robber found in paragraph two of the affidavit. It was based upon his recollection of the events surrounding the robbery. Although sketchy, the description is of sufficient detail to establish Woods's basis of knowledge. See Soles v. State, 16 Md. App. 656, 299 A.2d 502 (1973); La Fave § 3.4 (a) supra; Cf. La Fave § 3.4 (c) supra.
In paragraph three, the "veracity prong" from Mendheim to Locke and Locke to Parrish is not in question. Neither is such in issue from Parrish to Kelly. As to the basis of knowledge for Kelly's statement attributed to him, the affidavit reveals that such was based upon firsthand knowledge via a direct communication between him and appellant. No argument has been advanced that Kelly's statement, if true, was based upon anything other than firsthand knowledge. See La Fave § 3.3 (d), supra. However, a serious problem exists when viewing Kelly's statement as part of the basis for a finding of probable cause.
At trial, at the conclusion of appellant's voir dire examination of Mendheim and *Page 1143 
Hamlin and prior to admission of the articles seized from appellant's trailer, appellant requested that Kelly be called as a witness in order that he, under oath, could deny making the statement attributed to him in paragraph three. The assistant district attorney then stipulated that if Kelly testified he would make such a denial. Consequently, the state conceded that Kelly would testify that the statement as it appeared in paragraph three was not true. Furthermore, prior to issuance of the search warrant, Mendheim was unsuccessful in having Kelly verify the accuracy of the statement attributed to him by Parrish and Locke. Nevertheless, Mendheim relied upon the double hearsay information provided by Locke rather than the inconclusive statements of Kelly and utilized the information in his sworn affidavit.
In Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674,2676, 57 L.Ed.2d 667 (1978), the United States Supreme Court stated, as a rule of constitutional law:
 "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."
Appellant properly raised the issue of misrepresentation during his argument at trial after his voir dire examinations of Mendheim and Hamlin. Cf. Brooks v. State, 642 S.W.2d 791
(Tex.Cr.App. 1982).
The instant case does not fall within the situation addressed in Rugendorf v. United States, 376 U.S. 528, 84 S.Ct. 825,11 L.Ed.2d 887 (1964). The statement attributed to Kelly in paragraph three is not of "peripheral relevancy to the showing of probable cause." Id. at 532, 84 S.Ct. at 828; Franks,438 U.S. at 163, 98 S.Ct. at 2680. Inclusion of the statement in his affidavit, after gaining personal knowledge that Kelly would not confirm its accuracy, indicated a deliberate course of action by Mendheim to persuade the issuing judge to issue the search warrant on less than all the pertinent facts available to him. It cannot be questioned that the third paragraph as found in the affidavit is more accusatory in nature against appellant and provides a more sound basis for a finding of probable cause than if it had contained the additional negative facts known by Mendheim. The omission by Mendheim drastically altered the complexion of paragraph three. While it is not a direct false statement, its inclusion clearly misled the issuing judge as to its accuracy. It could, therefore, be considered a deliberate omission which is a species of an actual misstatement. State v. Lockett,232 Kan. 317, 654 P.2d 433 (1982). See People v. Easley, 33 Cal.3d 65,654 P.2d 1272, 187 Cal.Rptr. 745 (1982). Consequently, we find the omission to have caused the affidavit to be substantially misleading and, thus, material. People v. Easley, supra; Peoplev. Bowen, 137 Cal.App.3d 1020, 187 Cal.Rptr. 614 (1982).
Franks, 438 U.S. at 164-65, 98 S.Ct. at 2680-81, quoted with approval the following from United States v. Halsey,257 F. Supp. 1002, 1005 (S.D.N.Y. 1966), which we find apropos:
 "`[W]hen the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a truthful
showing' (emphasis in original). This does not mean `truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within *Page 1144 
the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be `truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true."
It is clear that the information put forth by Mendheim in paragraph three could not be "believed or appropriately accepted" by him to be true in light of his interview with Kelly. Further, couple such with the state's stipulation that Kelly would deny ever making the statement and the foundation for the paragraph crumbles. We are therefore of the opinion that the third paragraph could not be used to inform the issuing judge of sufficient facts and circumstances from which he could make an independent determination of probable cause to search. See State v. Roubique, 421 So.2d 859 (La. 1982).
Furthermore, the detail in paragraph three is insufficient to satisfy the self-verifying detail alternative to the "basis of knowledge" prong. Spinelli, supra; Aguilar, supra.
As previously noted, there are no "veracity-prong" questions in the fourth paragraph of the affidavit. We assume that the basis for Harris's statements was through firsthand knowledge, although such originates from the tenor of Jones's statement to Locke. However, a careful review of Jones's and Harris's testimony clearly establishes a sufficient basis of knowledge for the statements as well as their accuracy. Therefore, the issuing judge could rely upon the fourth paragraph in reaching his determination.
 "In determining the existence vel non of probable cause, the magistrate must make two distinct determinations. The number and the nature of these determinations do not vary, whether the specimen being analyzed is direct observation or hearsay information. He must:
 "(1) Evaluate the truthfulness of the source of the information; and
 "(2) Evaluate the adequacy of the factual premises furnished by that source to support the validity of the source's conclusion.
 "In the first instance, he is judging the integrity of a person. In the second instance, he is judging the logic of a proposition. These functions are distinct. They are the direct analogues of those other two functions performed by the ultimate finder of fact who 1) assesses the credibility of a witness and 2) then assesses the weight to be given the testimony of that witness.
. . . .
 "Once the magistrate has decided that the information is trustworthy, he has still only half completed his ultimate determination. He must still decide what the information is worth. He has decided that the source is not lying; but he has not yet decided whether the source is mistaken. The magistrate's second function is now to evaluate the information which he is accepting as true and to see what probabilities emerge from that available date.
. . . .
 "In applying then these tools of analysis to an application based upon a mixed predicate of direct observation and hearsay information, the issuing magistrate may, after evaluating both the trustworthiness of the source of the information and the weight and worth of the information itself, reach one of four conclusions:
 "(1) That the direct observation is adequate unto itself to establish probable cause;
 "(2) That the hearsay information is adequate unto itself to establish probable cause;
 "(3) That neither the direct observation nor the hearsay information, standing alone, is adequate to establish probable cause but that the two combined do add up to the establishment of such probable cause; or
 "(4) That even the sum total of the direct observation plus the hearsay information does not establish probable cause." (Citations omitted). Dawson v. State, 11 Md. App. 694, 276 A.2d 680, 681-84 (1971). *Page 1145 
Applying the above standards, as well as those enumerated inHadley, we make the following findings:
 (1) Paragraph one was of no assistance to the issuing judge in determining the existence of probable cause;
 (2) The portion of paragraph two containing the victim's direct observation of the robber could be used in determining probable cause to search, but standing alone is insufficient to satisfy such;
 (3) Paragraph three could not be considered in determining the existence of probable cause as it lacked a sufficient showing of the "basis of knowledge" from which it originated and lacked sufficient detail by which to verify itself; See State v. Scotti, 428 So.2d 771
(Fla.Dist.Ct.App. 1983);
 (4) The fourth paragraph could be used to assist in establishing probable cause, but standing alone is inadequate to do so;
 (5) Paragraph five offers no aid in the search for probable cause;
 (6) Taken together, the information found in paragraphs two and four does not add up to the establishment of probable cause.
The instant search warrant fails both quantitatively and qualitatively in its ability to supply probable cause to search. While there is no requirement that all information contained in the affidavit supporting a search warrant be dissected to the nth degree, the nature of the information, especially that which is not easily verifiable, must be more substantial than "an off-hand remark heard at a neighborhood bar." Spinelli, 393 U.S. at 417, 89 S.Ct. at 589. Probable cause does not require an officer to compile an airtight case against a suspect. Rather, it deals with the probable consequences of all the legitimate facts considered as a whole. Upon such a review, the instant affidavit fails.
A more thorough investigation could have revealed appellant's residence and the trailer number, as well as a more complete description of his appearance. Statements could have been taken from Parrish and Kelly, if they had not already been taken, prior to the issuance of the search warrant. Such could have been presented to the issuing judge as corroboration of the statements made in affidavit. Kelly's statements not confirming the information in paragraph three should have been included therein. Paragraph four could have been more thoroughly investigated by verifying it before requesting the search warrant. Jones and Harris could have been interviewed with the prospect of obtaining more detailed information than that recited in the affidavit. Their statements would also have been available to the issuing judge if needed. A more comprehensive interview of Riley could have aided in pinpointing the time frame which he had last seen appellant. Interviews with other residents may well have aided in ascertaining such.
The trial court erred in denying appellant's motion to suppress. Due to such, we reverse and remand this cause to the circuit court. We pretermit discussion of the remaining issues raised by appellant.
REVERSED AND REMANDED.
All the Judges concur.
[1] Included as appendix "A".
[2] Spelled Trace Hammond at appellant's suppression hearing, but referring to the same person.
[3] See also Richardson v. State, 419 So.2d 289 (Ala.Cr.App. 1982). *Page 1146 
 APPENDIX THE STATE OF ALABAMA, HOUSTON COUNTY.
 1. Before me J. Ronald Storey a Judge of the Houston County Circuit Court, Houston County, Alabama,
2. personally appeared Jackie Mendheim
 3. who, being duly sworn, deposes and says that My name is Jackie Mendheim. I am a police officer with the City of Dothan and that I have probable cause to believe and do believe that a crime has been committed in Dothan, Houston County, Alabama to wit: Robbery 1st degree and Assault 2nd degree and evidence of the said crime, to wit: one 32 caliber pistol, blood stained clothing, and a black wallet located at the residence of Jerry L. Williams, located at #119 Billy's Traler Park, Dothan, Houston County, AL. (See attached affidavit)
 Sworn to and subscribed before me this, the } } 1st day of December 1981 } _______________ ____________________________________________} Judge, Houston County District Court, } Houston County, AL. }
===============================================================
 SEARCH WARRANT THE STATE OF ALABAMA, HOUSTON COUNTY.
TO THE SHERIFF OR ANY CONSTABLE OF SAID COUNTY:
 (a) Proof by affidavit having this day been made before me by Jackie Mendheim
 (b) that My name is Jackie Mendheim, I am a police officer for the Dothan Police Department and that I have probable cause to believe that a crime has been committed in Houston County, Alabama to wit: Robbery 1st degree and Assault 2nd degree, and the evidence of the crime to wit: a 32 caliber pistol, blood stained clothing, and a black wallet, containing identification of the victim, are lcoated at the residence of Jerry L. Williams at #119 Billy's Trailer Park.
 (c) You are therefore commanded, to make immediate search on the person of and in and upon the above described premises for the following property: a 32 caliber pistol, black wallet containing identification of the victim and any blood stained clothing.
(d)
 and if you find the same or any part thereof, to bring it forthwith before me, at my office at the Houston County Court House
Dated the 1st day of December 1981.
 _________________________________________________________ Judge, Houston County District Court, Houston County, AL. *Page 1147 
1. Justice of the Peace or other Magistrate, as the case may be.
2. The Affiant.
3. State positively that the property is on the premises or in the place to be searched or that there is probable cause for believing the facts stated, as the case may be. The person and the place must be described.
(a) The Affiant.
(b) State the facts appearing in the affidavit.
(c) State "at any time of the day or night" if the affidavit states the facts positively; if the facts are stated only on "probable ground," state "in the daytime."
(d) Describe the property for which search is to be made.
This is to certify that the within Search Warrant was returned to me on this the 2nd day of December, 1981, together with the property listed thereon, and that the same was properly executed within the time allowed by law, and that the property seized thereunder was properly seized within the authority of said warrant.
__________________________________ HONORABLE J. RONALD STOREY JUDGE OF THE HOUSTON COUNTY CIRCUIT COURT HOUSTON COUNTY, ALABAMA
[EDITORS' NOTE: FORM IS ELECTRONICALLY NON-TRANSFERRABLE.]
 AFFIDAVIT FOR SEARCH WARRANT
STATE OF ALABAMA
HOUSTON COUNTY CASE NO. 81-11-2709
Before me, the undersigned Honorable J. Ronald Storey, a Judge of the Houston County Circuit Court, Houston County, Alabama, personally appeared Jackie Mendheim who being duly sworn deposes and says that he has probable cause to believe that on the premises known as 119 Billy's Trailer Park, further described as a brown trailer in the City of Dothan, Alabama, or it's police jurisdiction, there is now being concealed certain property, namely one chrome 32 caliber pistol, one pair of grayish trousers, a grayish shirt and a grayish hat, which are the fruits of the crime of robbery in the first degree and assault in the second degree, and are in violation of Title 13-A.
And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows: On Thursday, November 26, 1981, at 0155 A.M., Robert Woods, a taxi driver for Howell Taxi, was robbed and beaten severely in Billy's Trailer Park. The assault and robbery occurred on Bavarian Way just west of trailer #119. The taxi driver was instructed to pick up a fare between #115 and #122 Billy's Trailer Park. The taxi driver drove past #115, past #119, and saw someone come from the area of #119. Woods was robbed by a negro male armed with a 32 caliber chrome revolver. The negro male was described as being 6' 2" or 3" with real light skin. The victim was severely beaten in the face and on top of the head. The victim lost a large amount of blood. The negro male was described as being dressed in gray or grayish pants and gray shirt. *Page 1148 
On November 30, 1981, Lt. Harold Locke received a call from Mr. Billy Parrish who stated that a tenant from Billy's Trailer Park stated that a black male identified as Jerry L. Williams came to trailer lot #114 wanting a taxi. Jerry L. Williams is known to fit the description of the robbery suspect.
On November 30, 1981, approximately 3:00 P.M., Lt. Harold Locke received a phone call from a black male who identified himself as Ex-Houston County Deputy with the last name of Jones. Jones told Lt. Harold Locke that Jerry L. Williams was at that time in Donaldsonville, GA, and that Williams had told a girl named Beverly that he had beaten a man in Dothan and that he thought that he had died.
On December 1, 1981, at 2:15 P.M., contact was made with David Riley, Lot #118, Billy's Trailer Park. Riley stated he had not seen Williams since before Thanksgiving Day.
 ______________________________________ Signature of Affiant
 ______________________________________ Official Title
Sworn to and subscribed before me this 1st day of December, 1981.
 ______________________________________ Honorable J. Ronald Storey Judge of the Houston County Circuit Court Houston County, Alabama