Edwrick V. Fowler was convicted of robbery in the first degree and sentenced to 30 years' imprisonment. His appeal presents a number of legal issues.
The state's evidence tended to show that the Junior Food Mart No. 40 in the Deerfield section of Northport, Alabama, was robbed just shortly after 9 p.m. on February 12, 1981. The robber was a black man around six feet tall, rather thin, wearing a long greenish-brown army-type coat. He wore a white sweater or vest, disguised himself with a red ski mask with black trim around the eyes and mouth, and was armed with a pistol. Forty or fifty dollars in cash was taken in the robbery. After the attendant at the store, Miss Virginia Ann Spain, triggered an automatic alarm, a general alarm was broadcast. Officers began patrolling the general area where the robbery took place. Shortly thereafter, about 1.5 miles from the convenience store, two officers passed a Pontiac automobile parked on the side of the highway. The officers noticed that the hood was up and a man was putting gas in the car. The officers turned their car around, then turned around again, pulled off the road behind the Pontiac, and stopped. Although contradicted, there is evidence that when they told the man to stop, he proceeded to the door to the driver's seat instead. He did finally respond to the officers demand that he "Freeze." The officers approached him and requested some identification. The man, the appellant in this case, could not produce any identification. While the other officer was talking to the appellant, Officer Williams shined his flashlight inside the car and saw a gun lying on a white garment on the console between the front seats of the car.
The officers called their supervisor, Sergeant Simmons, to the scene. Another officer arrived at the scene and removed the pistol and the white sweater from the car and showed them to the shift supervisor. Forty-two dollars in cash was discovered in appellant's right front pocket. The officers ascertained the appellant's identity, did a check and discovered there was an outstanding misdemeanor writ against the appellant. They also determined that he was carrying the pistol without a permit. They then took the appellant, the white sweater-vest and the pistol back to the convenience store. Miss Spain identified the sweater and the pistol as being similar to those used and said the man was about the same size.
The officers returned to the automobile with the appellant. Sergeant Simmons, who had noted earlier that the car trunk did not have a lock, unlatched the trunk with a screw driver he found on the floorboard. The officers saw a coat and ski mask matching the description of those used in the robbery and immediately slammed the trunk back shut. They then transported the car to the Northport Police Department where a full-scale inventory search was conducted.
 I
Appellant first contends that the officers were not justified in stopping at his car in the first instance and that he was "illegally detained."
The Alabama Stop and Frisk Law, Code of Alabama 1975, §15-5-30, provides that:
 "A sheriff or other officer acting as sheriff, his deputy or any constable, acting within their respective counties, any marshal, deputy marshal or policeman of any incorporated city or town within the limits of the county or any highway patrolman or state trooper may stop any person abroad in a public place whom he reasonably suspects is committing, has *Page 1091 
committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions."
The "stop and frisk," to pass the constitutional test ofTerry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968), must be weighed in light of the particular invasion which the stop and frisk involves as against the governmental interest which permits an intrusion on a private citizen's Fourth Amendment rights.
The standard of "reasonable suspicion" employed in such instances, because of the minimally intrusive nature of the procedure contemplated, justifies a limited stop upon facts which demonstrate something less than full probable cause for arrest. Butler v. State, 380 So.2d 381 (Ala.Cr.App. 1980);Bagony v. City of Birmingham, 371 So.2d 80 (Ala.Cr.App. 1979).
In some situations, a stop and frisk is only a minor inconvenience or a petty indignity compared to the government's greater interest in detecting or preventing crime. It is certainly not unusual for police officers to check on an automobile stopped along the side of a highway. Such a stop might be made simply to offer assistance to a stranded motorist. In this instance, we find that the rather difficult balancing test required by the Terry case weighs solidly in favor of the investigating officers. See Sterling v. State,421 So.2d 1375 (Ala.Cr.App. 1982).
 II
Appellant next contends that the discovery of the pistol and the white sweater-vest in the automobile constituted an unlawful search and seizure. The state contends that the items were plainly visible, justifying their seizure from the automobile without a warrant under the doctrine of "plain view" as set out in Coolidge v. New Hampshire, 403 U.S. 443,91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).
The testimony is clear that the following requirements of the plain view exception have been met: (1) The officer must have prior justification for the intrusion, (2) he must come upon the evidence inadvertently, and (3) he must immediately recognize the object discovered as evidence of wrongdoing.Myers v. State, 431 So.2d 1342 (Ala.Cr.App. 1982), writ quashed, 431 So.2d 1346 (Ala. 1983). The officer did have a right to be where he was, as considered in detail in I above. The officer obviously had no prior knowledge of the presence of the weapon and sweater-vest in the car. The case of Berryhillv. State, 372 So.2d 355 (Ala.Civ.App. 1979) is factually distinguishable and not in point. The officer had no difficulty in determining that the pistol and the sweater-vest were evidence of wrongdoing. He asked the appellant if he had a pistol permit. Appellant admitted he did not, whereupon the officers seized the pistol and the sweater-vest. As appellant admits, a "search" implies probing into secret places for that which is hidden. This was not an unlawful search and seizure.
 III
Appellant next contends that the officers were not justified in looking in the trunk of the car where the ski mask and coat were discovered. At the point in time when they looked in the car trunk, it had been established that the appellant was close in time and place to the robbery; that the appellant resembled the robber; that the gun and white sweater-vest, found in the car resembled those used by the robber, as stated by the victim, Miss Spain. The right to search the trunk of an automobile relies in part on the "automobile exception" to the rule prohibiting warrantless searches under the Fourth Amendment. See United States v. Ross, 456 U.S. 798,102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). With the facts in this posture, the officers had probable cause and were justified in searching the remainder of the vehicle, including the trunk.
 IV
Appellant finally contends that the court erred in its charge to the jury. The appellant levels a number of criticisms at *Page 1092 
the oral charge, but the only one to which he duly objected relates to whether or not the court charged on the elements of robbery. While the court's charge may be somewhat rambling, and not identical to that charge set forth in the Pattern Jury Instructions, we find that it did not constitute reversible error.
This case is due to be affirmed.
AFFIRMED.
All the Judges concur.