David Horace Roberts was indicted and convicted for trafficking in cocaine. Sentence was three years' imprisonment and a fine of $50,000. On appeal Roberts argues that the State's evidence is insufficient to connect him with the cocaine and to support a conviction.
Roberts waived his right to a jury and was tried by a judge. The circumstantial evidence presented by the State is more than adequate to prove his guilt beyond a reasonable doubt.
As part of a continuing investigation into the cocaine traffic in Morgan County, the residence at 421 Oak Street in Decatur had been under surveillance. Morgan County Deputy Sheriff Walter Price obtained a warrant to search that residence, averring that the residence was "under the domain and control of David Roberts and Mike Partain."
The residence actually belonged to Eleanor Rambridge, Roberts' elderly relative who was confined in a medical facility. Roberts "cared after" her home. The cable television service was listed in Roberts' name. However, Elizabeth Roberts had been declared Ms. Rambridge's legal guardian and was the custodian of the property at 421 Oak Street.
Roberts' family owned and operated the Roberts Catfish Lodge in Hartselle. Roberts worked there and "stayed there quite frequently and a good bit of the time" in an apartment unit at the lodge.
Mike Partain lived at the residence "part-time" and stayed there "maybe a little bit more" than Roberts. There was no testimony that any of Roberts' clothing was found in the residence.
The search warrant was obtained and executed on Monday, April 5, 1982. The investigation of Roberts had been going on since 1978. On either the previous Friday or Saturday evening, Roberts' Cadillac had been observed parked at the residence during a "spot check" by investigating officers. The officers had observed "a lot of people come and go" from the residence.
On Monday morning around 9:30 surveillance was established. At that time Partain's car was observed but Roberts' Cadillac was not. Partain left around 11:00 that morning and did not return.
The officers continued their observation of the residence until 3:30 that afternoon when the surveillance was broken off. When the officers returned fifteen or twenty minutes later, they observed Roberts' Cadillac parked in front. No one saw Roberts enter or leave the residence. The Cadillac was driven away and was stopped within two or three blocks. Roberts was driving. He was given a copy of the search warrant and agreed to return with the officers to the residence.
Roberts opened the door to the residence and "went straight to the location of the marijuana upon entry into the residence." Decatur Police Sergeant Edgar Taylor testified that Roberts walked to an ottoman and said "something to the effect of `Here it is', or `I will show you where it is', or `I will show you what I got.'" Roberts opened the ottoman, revealing a small quantity of marijuana inside.
Deputy Price testified that approximately one-quarter pound of marijuana was found in a bedroom and that Roberts "must have said something about this marijuana being his, too." Drug paraphernalia found in the residence included a "cocaine snorting device", a screen wire of the type "commonly used to sift cocaine", a piece of laboratory equipment commonly used for "freebasing" cocaine, and a hypodermic syringe. Two Valium tablets were found on Roberts. One Methaqualone (Quaalude) *Page 424 
tablet was found in a bowl on top of the refrigerator.
The cocaine which is the basis of Roberts' conviction was found by Sergeant Taylor in a "leather briefcase, folder-type thing." While the other officers were searching the residence, Sergeant Taylor stayed with Roberts in the living room. Roberts was sitting on the sofa when Taylor began to examine a leather case on the coffee table. The Sergeant became suspicious when he felt a "lump" inside the case and observed Roberts' reaction. Roberts "had a very vivid reaction and appeared shocked." Taylor testified that Roberts appeared "scared, worried, concerned, maybe even shocked; . . . his eyes widened, his lips seemed to tighten a bit." Taylor stated, "I thought there would be something in there just from his reaction."
Taylor opened the leather folder and found $1800 in cash which Roberts admitted was his and for which he was given a receipt. Two clear plastic sandwich bags of cocaine were discovered inside a white envelope with the preprinted address in the lefthand corner of "J.M. Seafood Company, Post Office Box A in Birmingham, and specializing in fresh and frozen seafood, wholesale." This envelope was found inside a pocket of the folder. The total weight of this cocaine was 32.37 grams or 1.4 ounces. Roberts denied any knowledge of the presence of the cocaine.
Also inside the leather folder or briefcase were found insurance policy statements and related documents for Roberts Catfish Restaurant, a premium invoice for the same insurance policy, Roberts' birth certificate, and Roberts' passport application with a departure date of April 2nd — two days after the search was conducted. After the search was completed, Roberts said to the officers, "Ya'll must think I'm a big drug dealer or something."
At trial, Roberts did not present any defense. On appeal, he argues that, although the circumstances are "suspicious", the "objective" facts do not establish his connection with the residence or the leather case.
In reviewing the issue of the sufficiency of the evidence to support a conviction, this Court must accept as true the evidence presented by the State, view the evidence in the light most favorable to the prosecution, and accord the State all legitimate inferences therefrom. Johnson v. State,378 So.2d 1164, 1169 (Ala.Cr.App.), cert. quashed, Ex parte Johnson,378 So.2d 1173 (Ala. 1979); Cumbo v. State, 368 So.2d 871, 874
(Ala.Cr.App. 1978), cert. denied, Ex parte Cumbo, 368 So.2d 877
(Ala. 1979).
In a prosecution for the possession of a controlled substance, "(t)he State must introduce additional evidence (other than mere presence) from which the defendant's unlawful possession of the contraband could be inferred in order to support a conviction. See 57 A.L.R.3d 1319. Knowledge of the presence of the controlled substance by the defendant must also be established beyond a reasonable doubt. Temple v. State,366 So.2d 740 (Ala.Cr.App. 1978)." Ex parte Story, 435 So.2d 1365,1366 (Ala. 1983). The accused's guilty knowledge of the presence of the contraband may be established "by evidence of acts, or conduct of the accused, from which it may be fairly inferred that he knew of the existence of the narcotics at the place where they were found." Temple, 366 So.2d at 741. The inference of knowledge must be natural and rational. "When the existence of a fact is sought to be established by provinganother fact, the fact so proven must be a fact from which theexistence of the fact sought to be proven can be naturally andrationally inferred or presumed." Batson v. Birmingham Trust Savings Co., 241 Ala. 629, 632, 4 So.2d 307, 310 (1941) (emphasis in original). See also Ex parte Campbell,439 So.2d 723 (Ala. 1983).
Here, the fact that the cocaine was found in a leather case containing a substantial amount of currency which Roberts admitted belonged to him, insurance policies and documents connected with the family business where Roberts was employed, Roberts' birth certificate, and his *Page 425 
application for a passport with a departure date in the very near future supplies a natural and reasonable inference that Roberts knew the cocaine was in the case and supports a rational conclusion of constructive possession.
Roberts' recent possession of the leather case can be logically and reasonably inferred from the facts that he was observed outside the residence in which the case was found, from the nature of the personal and business papers contained in the case, and, most significantly, from the large amount of cash found therein. It is hardly reasonable or natural that an individual will leave $1800 in cash in an unsecured case lying on a coffee table in the living room of a residence to which he claims little if any connection or to which any number of people have access. In drawing the inferences of knowledge and possession, we have considered Roberts' reaction when Sergeant Taylor began his examination of the leather case. Annot. 56 A.L.R.3d 948, Section 6 (1974). The facts and circumstances support a finding of constructive possession. Compare Cox v.State, 367 So.2d 535 (Ala.Cr.App. 1978), cert. denied, Ex parteCox, 367 So.2d 542 (Ala. 1979) (proof that person was in possession of a writing generally warrants a finding or presumption that such person knew the contents of said writing). Here, there exists a rational connection between the facts proved — the cocaine in the same case with Roberts' business and personal documents and papers and money — and the ultimate facts presumed — his knowledge and control of the cocaine. Here, the inference of knowledge and control, on the basis of human experience and with the application of common sense, is a probable and natural explanation of the facts proven, and logically flows from those facts. See 29 Am. Jur.2dEvidence Section 162 (1967). "It is a logical and reasonable deduction from the evidence and is not supposition or conjecture." Thomas v. State, 363 So.2d 1020, 1022 (Ala.Cr.App. 1978). We find the evidence sufficient to support the conviction. Mitchell v. State, 395 So.2d 124 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 127 (Ala. 1981). The trier of fact is "under a duty to draw whatever permissible inferences it may from circumstantial evidence and to base its verdict on whatever permissible inferences it chooses to draw." Gullatt v.State, 409 So.2d 466, 472 (Ala.Cr.App. 1981). It has been recognized that, where the accused was in nonexclusive possession of the premises, the fact that the drugs were found among or near the defendant's personal belongings may constitute a circumstance sufficient to link him with the possession of the drugs. 56 A.L.R.3d 948, Section 10, citingPeople v. Mateo, 171 Cal.App.2d 850, 341 P.2d 768 (1959) (drugs found in suitcase containing recently dated receipt).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.