James Gary was indicted for the unlawful possession of marijuana and cocaine in violation of Alabama Code 1975, §20-2-70. A jury acquitted him of possessing marijuana but convicted him of possessing cocaine. The defendant was sentenced as a habitual offender to thirteen years' imprisonment. Three issues are raised on appeal.
 I
Gary challenges the sufficiency of the evidence to support the conviction. *Page 605 
This issue was not raised at trial and is not preserved for review.
The apartment that was searched was rented by the defendant's mother. Without objection, Phenix City Police Officer Boyd Battles testified that the "informant advised me that the one that made the sale was James Gary, alias Guinea Pig." Officer Battles stated that although he did not know who lived in the apartment, other than a "lady and another man", he knew the defendant "stayed" there, and that his informant had told him that the defendant was living there at the time the drug sale was made.
Russell County Sheriff's Deputy B.J. Ammons served the warrant on Mrs. Annie Ruth Gary, the defendant's mother. Also present at the two-bedroom apartment were the defendant and an unidentified man.
Phenix City Police Investigator Jackie Thorne searched the apartment. He saw one man in the living room and the defendant coming out of the bedroom where the drugs were found. The defendant was wearing "a pair of long pants, no shirt, no shoes" at 1:45 on the afternoon of January 27, 1984. The bedroom contained a bed which "appeared that it had been slept on", a dresser, and a wooden chest, on which were lying some men's clothing. The chest contained "cameras, . . . an old radio, pictures [photographs] of females and Mr. Gary, letters, receipts with Mr. Gary's name on them", and "some small plastic packets about an inch and a half square, with a white powdery residue on them; also some seeds in the bottom of the chest." This powder contained cocaine. A "plate with a white substance on it" was found under the bed. Expert examination did not reveal the presence of any controlled substance on this plate.
In the bathroom was found a "partially smoked hand-rolled cigarette which contained marijuana." Some seeds were recovered from the love seat in the living room.
The defendant told Investigator Thorne that "he was just spending the night", that "he was a friend spending the night there with him [the other man]."
This evidence was sufficient, though just minimally, to connect the defendant with the cocaine and to support his conviction. In Temple v. State, 366 So.2d 740 (Ala.Cr.App. 1978), this Court stated the elements necessary to prove the constructive possession of a controlled substance by circumstantial evidence and we are guided by those principles in making our determination of sufficiency.
The defendant's mere physical proximity to the drugs was insufficient, of itself, to sustain his conviction. Ex parteStory, 435 So.2d 1365 (Ala. 1983). However, the evidence is sufficient when his presence is combined with the additional circumstance that the cocaine was found in a wooden chest containing items which the jury could have properly inferred belonged to the defendant. "Proximity to illegal drugs, or presence on the property where they are located, . . . may be sufficient to support a finding of possession when accompanied with testimony connecting the accused with the incriminating surrounding circumstances." German v. State, 429 So.2d 1138,1142 (Ala.Cr.App. 1982). Here, as in Roberts v. State,451 So.2d 422 (Ala.Cr.App. 1984), where the cocaine was found in the briefcase of the accused, there exists a rational connection between the chest where the drugs were found and the defendant's knowledge and control of the cocaine. That rational connection is provided by the fact that items were found in the chest which, by reasonable inference, were personal items of the defendant. See also Lyons v. State, 455 So.2d 295
(Ala.Cr.App. 1984); Walker v. State, 356 So.2d 674 (Ala.Cr.App. 1977), cert. denied, Ex parte Walker, 356 So.2d 677 (Ala. 1978). Where drugs are found on premises of which the defendant was in nonexclusive possession, the fact that they were found among or near his personal belongings may be a circumstance which is sufficient to link him with the possession of those drugs. Annot., *Page 606 
56 A.L.R.3d 948, § 10 (1974). The evidence was sufficient to sustain the conviction.
 II
The search occurred in January of 1984, but the defendant was not charged with possession until approximately three months after that. Under cross examination by defense counsel, Investigator Thorne testified that the defendant was initially "taken down [to the police station] on a different charge, not on the drug charge." When defense counsel continued questioning Thorne about the time and place of the defendant's arrest for possession, Investigator Thorne stated that the defendant was originally arrested for a violation of his parole.
 "Q. Mr. Thorne, when you charged this young man with possession of cocaine and marijuana where was he?
 "A. He was charged with parole violation to start with.
 "Q. Yes, sir, I understand that, but how about responding to my question. Where was he when you charged him with this?
 "A. He was charged March the 13th, 1984. His whereabouts I do not know, I did not make the arrest on him."
Defense counsel then requested a mistrial because the answer "in itself advises the jury that he has been convicted of a crime in the past." The trial judge overruled this motion: "He was responding to your question. The motion for mistrial is overruled."
On redirect examination, Investigator Thorne testified without objection that he did not go to the apartment to arrest the defendant for a parole violation and that he first learned that the defendant was on parole when he called his parole officer at the police station after the search. Defense counsel elicited this same information during his further cross examination of Thorne.
The potentially damaging information contained in Investigator Thorne's comment could have been eliminated by proper instructions from the trial judge. Consequently, the denial of the mistrial was proper. Nix v. State,370 So.2d 1115, 1117 (Ala.Cr.App.), cert. denied, Ex parte Nix,370 So.2d 1119 (Ala. 1979). After doing everything he could to invite the error, defense counsel made no request for curative instructions after the mistrial was denied. Compare Bradley v.State, 450 So.2d 173, 175-76 (Ala.Cr.App. 1983). The matter of the defendant's parole was pursued by the prosecution and the defense after the topic was broached and, other than the request for mistrial, there was no other objection. Under these circumstances, the defendant has no cause for complaint. The error, if any, must be considered waived.
 III
After the jury had been selected, and immediately before the trial judge made his opening remarks, the defendant requested "another lawyer" and requested that he be allowed to hire his own attorney.
Appointed defense counsel answered the defendant's charges of his alleged incompetence and stated:
 "I talked with his family and they indicated they could not be here, and he [defendant] was saying that those are the ones that can testify on his behalf. My professional opinion is that when you have to subpoena your client's close relatives, that they're not going to be of benefit to your client, if they will not come in and speak with me voluntarily and I have to subpoena them.
 "I've been through this thing with Mr. Gary and I'm just not giving him the answers that he wants to hear, although I'm giving him the truth."
During the trial, defense counsel did subpoena the defendant's mother but the defendant objected:
 "MR. BERNARD [Defense Counsel]: I want to place this on the record: that I have subpoenaed Annie Ruth Gary, the mother of the defendant, James Gary. The defendant has advised me that his mother is really ill, and I had advised James that I wanted the police to go and pick her up and bring her, and Mr. Gary *Page 607 
has advised me that he does not want that done.
 "THE COURT: Mr. Gary, would that be correct, what Mr. Bernard just said?
"THE DEFENDANT: Yes, sir.
 "THE COURT: Do you understand that I can issue an attachment so that she will be brought here to the courtroom?
"THE DEFENDANT: I understand.
"THE COURT: And you do not wish for me to do that?
 "THE DEFENDANT: I been thinking about it, you know. She's real sick. She just come out of the hospital. I don't want to upset her no worse than she is, you know."
Counsel's assistance was not ineffective under the standard set forth in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There has been no showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 104 S.Ct. at 2068. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland,104 S.Ct. at 2067.
Defense counsel did not subpoena witnesses because those witnesses refused to testify voluntarily for the defendant even though they were "close relatives". "The decision not to call a particular witness is usually a tactical decision not constituting ineffective assistance of counsel." Oliver v.State, 435 So.2d 207, 208-209 (Ala.Cr.App. 1983).
The defendant gave oral notice of appeal on November 27, 1984. Although new counsel was appointed to represent the defendant seven days later on December 4, 1984, there was no motion for a new trial. This Court finds no evidence to support the defendant's allegations of incompetent counsel.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.