Marsha Wesenberg was charged in a two-count indictment with possession of cocaine and trafficking in marijuana. This case was tried before the trial judge without a jury. The judge found the appellant "guilty of possession of cocaine," and "felony possession of marijuana." The appellant was sentenced to eighteen months' imprisonment, which was suspended, and she was placed on probation. However, the appellant was ordered to serve ninety days in the county jail after the birth of her baby.
William Jameson, a narcotics investigator with the Montgomery, Alabama, Police Department, testified that he went to the residence of the appellant and Richard Babston at 2211 Yancy Avenue at 8:25 a.m. on June 30, 1985 to execute a search warrant. The search warrant authorized a search of the residence, any out buildings and vehicles there for drug paraphernalia, marijuana, and other controlled substances.
When Jameson and the other officers arrived at the residence, Lawrence Rafter met them at the door. Once Jameson entered the residence, he noticed the master bedroom door was closed. When the door was opened, Jameson found the appellant *Page 330 
and Richard Babston in the room. The appellant was dressed in only a tee shirt and briefs as she and Babston were getting dressed when Jameson entered the room.
A search of the master bedroom was conducted by Jameson. In the dresser drawer in this bedroom, Jameson found a plastic bag of white powder (State's exhibit # 1), several packs of rolling papers (State's exhibits # 2 and # 3), a small set of scales (State's exhibit # 6), and a butt containing a leafy substance (State's exhibit # 7). Under the bed in the master bedroom, Jameson found two plastic trays (State's exhibits # 9 and # 10). A large plastic bag and ten small plastic bags, all of which contained leafy material (State's exhibit # 11), were found on the two plastic trays. Loose leafy material was also in the trays.
Jameson also made a search of the second bedroom. In this room he found a white duffle bag (State's exhibit # 22) under a chair. Inside the duffle bag Jameson found three plastic bags of leafy material (State's exhibit # 23, # 24, and # 25).
Officer L.V. Moore assisted Jameson in the search. Moore found a set of scales (State's exhibit # 8), and a plastic bag containing leafy material (State's exhibit # 5) on a shelf in the utility room. He also found a green laundry bag (State's exhibit # 21) under the house. Inside the laundry bag, Moore found two more bags. One bag contained a plastic bag of leafy material and the other bag contained five plastic bags of leafy material.
Moore also testified that he found women's clothing in the dresser drawer in the master bedroom. The appellant told Moore she lived at this residence when she was asked where she lived.
Officer B.H. Davis also assisted in the search of this residence. Davis found two butts containing leafy material (State's exhibit # 4) in an ashtray in the living room. Jameson, Moore, and Davis also testified they turned over the evidence which they found to Officer Francis Fernandez.
Fernandez acted as the evidence technician during the search of this residence. After receiving evidence from Jameson, Davis and Moore, Fernandez turned over the evidence to Allen Adair, a criminalist with the Department of Forensic Sciences. Fernandez testified that, according to the inventory list, he turned over sixteen small plastic bags and six large plastic bags to Adair.
Adair testified that he received certain evidence from Fernandez and analyzed the evidence for the presence of controlled substances.
Adair stated that State's exhibit # 11 consisted of one large plastic bag containing marijuana (which weighed 205.5 grams) and eleven small plastic bags containing marijuana (all of which weighed 204.3 grams). Adair identified State's exhibit #4 as two marijuana cigarette butts and State's exhibit #7 as one marijuana cigarette butt. State's exhibit # 5 was identified as a plastic bag containing 17.2 grams of marijuana. State's exhibits # 14 through # 18 were identified as five plastic bags of marijuana with a total weight of 1114.5 grams of marijuana. State's exhibit # 20 consisted of a plastic bag of marijuana (which weighed 221.3 grams). State's exhibit # 23 consisted of three plastic bags of marijuana (with a total weight of 56.2 grams). State's exhibit # 24 consisted of twenty plastic bags of marijuana (with a total weight of 166.3 grams). State's exhibit # 25 consisted of nine plastic bags of marijuana (with a total weight of 199.3 grams). State's exhibit # 1 was a plastic bag containing 17.2 grams of cocaine.
Adair stated he received forty-four small bags and seven large bags of marijuana (fifty-one total bags). The total weight of the marijuana was 2184.8 grams.
The appellant testified that she had been living with Babston for about two months prior to her arrest. She stated that during this time she never had any drugs under her control. When the appellant wanted marijuana she would ask Babston and he would give her a marijuana cigarette. She knew Babston would get the marijuana from some place in the house, but she did not know where. On the night before her arrest, the appellant obtained and smoked *Page 331 
two or three marijuana cigarettes. In fact, one of the marijuana cigarette butts found in the ashtray in the living room had been hers.
The appellant testified that Babston had about half a bag of cocaine about two weeks before their arrest. Both she and Babston used some and gave most of it to a person named Chris. What was left of the cocaine the appellant put in a bottle and placed it in the bathroom cabinet. Soon thereafter, Babston took the bottle from the cabinet and the appellant did not see it again.
The appellant stated she and Babston had separate dresser drawers in the bedroom. She testified she did not enter Babston's dresser drawers except to "put up his things."
 I
The appellant maintains the State presented a faulty chain of custody because it is questionable whether the evidence Adair identified as marijuana was the evidence which had been given to him by Fernandez. The following chart will be helpful to our discussion of this issue.
 State's Adair's testimony Officer's testimony
 Exhibit
 ----------------------------------------------------------------------
 #4 two marijuana cigarettes two butts
 found in butts (weight 2/10 g)
 ashtray in
 living room by
 Jameson
 ----------------------------------------------------------------------
 #5 one plastic bag containing one plastic bag of
 found in utility marijuana (weight 17.2 g) leafy substance
 room on shelf
 by Moore
 ----------------------------------------------------------------------
 #7 one marijuana cigarette butt one butt
 found in
 dresser drawer
 in master
 bedroom by
 Jameson
 ----------------------------------------------------------------------
 #9-10 — two plastic trays
 ----------------------------------------------------------------------
 #11 one large bag of marijuana one large bag of
 found in plastic (weight 205.5 g) eleven small leafy substance, ten
 trays (#9 bags of marijuana (weight smaller bags of
 #10) under bed 204.3 g) lleafy plus one bag
 in master leafy substance
 bedroom by leafy substance from
 Jameson plastic trays
 ----------------------------------------------------------------------
 #14-18 five clear plastic bags of
 marijuana (1114.5 g)
 ----------------------------------------------------------------------
 #20 one clear bag of marijuana
 (221.3 g)
 ----------------------------------------------------------------------
 #21 laundry bag which
 found under contained two bags;
 house by one bag contained
 Moore one small bag of
 leafy substance;
 second bag contained
 five bags of leafy
 substance
 *Page 332 
 ----------------------------------------------------------------------
 #22 white duffle bag white duffle bag
 found under
 chair in, second
 bedroom by
 Jameson
 ----------------------------------------------------------------------
 #23 one bag containing three bags one bag of leafy
 found in duffle of marijuana (weight 56.2 g) substance
 bag (#22)
 ----------------------------------------------------------------------
 #24 one bag containing twenty one bag of leafy
 found in duffle bags of marijuana (weight substance
 bag (#22) 166.3 g)
 ----------------------------------------------------------------------
 #25 one bag containing nine bags one bag of leafy
 of marijuana (weight 199.3 g) substance
 ----------------------------------------------------------------------

Adair testified that he received from Fernandez forty-four small bags and seven large bags (total of fifty-one bags),[1]
which he later determined to contain marijuana. Fernandez testified that he only gave Adair sixteen small bags and six large bags (total of twenty-two bags) of leafy material. Following argument by defense counsel about the discrepancy in the quantity of bags of marijuana, the trial judge agreed to exclude all evidence concerning the marijuana except for sixteen small bags and six large bags. However, the judge did not identify the sixteen small bags and six large bags he was admitting into evidence. At the end of the trial the judge found the appellant guilty of possession of the marijuana contained in State's exhibits # 4, 5, 7, 11, 23, 24 and 25. He found her not guilty of possession of the marijuana contained in exhibit # 21.
"The establishment of a chain of custody is needed to show a reasonable possibility that evidence has not been tampered with or altered." Grice v. State, 481 So.2d 449, 451 (Ala.Cr.App. 1985). "To establish a sufficient predicate for admission into evidence, it must be shown that there was no break in the chain of custody. Identification and continuity must be sufficiently established to afford ample assurance of the authenticity of the item." Whetstone v. State, 407 So.2d 854, 859 (Ala.Cr.App. 1981).
Applying the above principles, we find no problem with the chain of custody concerning State's exhibits # 4, 5, 7 and 11. The continuity of possession of these items of evidence was established by testimony from the officers who conducted the search as well as Fernandez and Adair. There is no discrepancy apparent in the identification of these exhibits by the officers and also Adair.
However, we do have a problem with the chain of custody as to State's exhibits # 23, 24 and 25. Officer Jameson testified that the total number of bags of leafy material constituting these three exhibits was three. Adair testified that there was a total of thirty-two bags of marijuana contained in three bags in these three exhibits. Thus, due to this conflict in evidence, we do not find that the identification of State's exhibits # 23, 24 and 25 was sufficiently established to warrant their admission into evidence. These exhibits should have been excluded.
Notwithstanding the problems with the chain of custody as to State's exhibits # 23, 24 and 25, we do not conclude a reversal is required on this issue. Although it was error not to exclude the evidence contained *Page 333 
in State's exhibits # 23, 24 and 25, there was ample evidence that was properly admitted into evidence which supports the appellant's conviction for possession of marijuana. Thus, we conclude that the error raised as to this issue was harmless.
We note that the appellant has no problem, nor do we, with the chain of custody concerning the cocaine at issue.
 II
The appellant contends there was insufficient evidence to support her conviction because the State did not prove she had knowledge of the presence of the drugs in the house.
 "Where the accused is not in exclusive possession of the premises, his knowledge of the presence of the controlled substance may not be inferred 'unless there are other circumstances tending to buttress this inference.' Temple v. State, 366 So.2d 740, 743 (Ala.Cr.App. 1979). When constructive possession is relied upon, there must be some fact or circumstance which will afford the jury a 'rational inference' that the accused had knowledge of the drugs. Ex parte Campbell, 439 So.2d 723, 724 (Ala. 1983)."
Lyons v. State, 455 So.2d 295, 296 (Ala.Cr.App. 1984).
 "While physical proximity to the contraband is relevant, this evidence alone does not 'add the necessary connection' between appellant and the contraband to show that appellant had knowledge of the presence of controlled substances. Temple, supra, at 743."
Smith v. State, 457 So.2d 997, 999-1000 (Ala.Cr.App. 1984).
 "Where drugs are found on premises of which the defendant was in nonexclusive possession, the fact that they were found among or near his personal belongings may be a circumstance which is sufficient to link him with the possession of those drugs. Annot., 56, ALR.3d 948, § 10 (1974)."
Gary v. State, 473 So.2d 604, 605 (Ala. 1985).
The evidence in this case supports the rational inference that the appellant had knowledge of the drugs in the residence. The circumstances of this case logically connect her to the drugs.
The appellant admitted to the officers that she lived at the residence described in the search warrant. She was found in the bedroom where the majority of the drugs in question were found. At the time, she was dressed in a tee shirt and briefs. Female clothing was found in the dresser drawers in which cocaine, a marijuana cigarette butt and drug paraphernalia were found.
Thus, there is more than just the appellant's physical proximity to the drugs which provides her connection to the drugs. This case is similar to Gary, supra, where this court held the evidence was sufficient to support a finding that the defendant had knowledge of the contraband where the defendant's presence was combined with the circumstance that the contraband was found in a chest which contained items of clothing which the jury could have inferred belonged to the defendant.McHellen v. State, 351 So.2d 689 (Ala.Cr.App. 1977), and authorities cited therein.
Therefore, we conclude that the circumstances of this case afford the rational inference that the appellant had constructive possession of the drugs. Smith, supra.
 III
During the cross-examination of Officer Jameson, the following occurred.
 "Q What would it be about? Would not somebody measuring out marijuana in two and three grams be mostly using that for their own personal use?
"A Yes, sir.
 "Q Now, these cigarette butts, there is no doubt in your mind that these were for somebody's own personal use; is that correct?
"MR. JAMES: Objection.
"THE COURT: Sustained.
 "Q (By Mr. Flack): Now, did you find, of your own personal knowledge yourself, *Page 334 
did you find any marijuana that was packaged for sale?
 "MR. JAMES: Objection, Judge, as to whether what's packaged for sale. That's —
"THE COURT: Sustained." (R. 41-42)
". . . .
 "Q All right. Now, this marijuana that you found in the tray was already in the ten plastic bags; is that correct?
"A Yes, sir.
"THE COURT: Any further questions?
"MR. FLACK: Yes, sir.
 "Q (By Mr. Flack): So, it would be more approximate for own personal use; is that correct?
"MR. JAMES: Objection.
"THE COURT: Sustained." (R. 43)
The appellant contends the trial judge erred by not allowing Jameson to give his opinion as to whether the marijuana was for personal use or for sale. We do not agree.
The questions asked of Jameson would have required him to answer based on his impression of matters not within hispersonal knowledge. If Jameson had answered these questions, he would have given his opinion of the intention of the possessor(s) of the marijuana as to the usage of this substance. This is not permissible. C. Gamble, McElroy'sAlabama Evidence, § 128.08 (3rd ed. 1977); Flanagan v. State,369 So.2d 46 (Ala.Cr.App. 1979).
Furthermore, whether the marijuana was for personal use or not was a question for the trier of fact, in this case, the judge. Thus, the judge correctly refused to allow Jameson to give his opinion as to the usage of the marijuana.
 IV
The appellant asserts that his right of cross-examination was improperly limited because the trial judge refused to allow defense counsel's questions concerning the ownership of the drugs.
The crime of possession of a controlled substance can be jointly committed and the guilt of an accused does not depend on ownership of the controlled substance. Whitehead v. State,429 So.2d 641 (Ala.Cr.App. 1982), cert. denied, 429 So.2d 641
(Ala. 1983); Lyons v. State, 455 So.2d 295 (Ala.Cr.App. 1984).
Thus, the trial judge did not err in disallowing defense counsel's questions regarding who owned these drugs.
For the reasons stated, the judgment of the trial court is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] Although Adair's testimony establishes he did receive a total of fifty-one bags, we are unable to determine from his testimony exactly which of the fifty-one bags constituted the forty-four small bags and the seven large bags.