BOWEN, Judge.
Early David Lamar was charged by indictment with the unlawful possession of cocaine. His first trial, which took place on January 22, 1990, was terminated when the trial court granted Lamar’s motion for a mistrial. On February 28, 1990, he was retried and convicted. He was subsequently sentenced as a habitual offender to 10 years’ imprisonment and was fined $2500. Lamar raises five issues in this appeal from his conviction.
I
Lamar contends that the trial court erred in denying his motion to suppress the cocaine. The basis of this argument appears to be a claim that there was no probable cause for his warrantless arrest.
The events that gave rise to Lamar’s prosecution occurred around 1:30 or 2:00 on the morning of December 20, 1988. Isaac Lewis, who was an investigator with the Opp Police Department at the time of the offense, testified at the suppression hearing that he received information from a reliable informant[1] that the defendant was at the Hideaway Club and was in possession of illegal drugs. The informant described the vehicle Lamar was driving, an *1384 Oldsmobile Cutlass, and also provided a tag number for this vehicle. Investigator Lewis and Officer Larry Wicker drove to the Hideaway Club, but were unable to locate a vehicle matching the informant’s description. The officers began looking for the vehicle in the neighboring area and very quickly located it parked in front of a residence on Hardin Street, only some two blocks from the Hideaway Club. The officers pulled in approximately a block away and ascertained that the tag number of the vehicle matched that provided by the informant. They also observed that the car was occupied by one person, although they were unable, from that distance, to identify the occupant as the defendant, and they observed that there were other persons around the car.
Shortly thereafter, a second car, a Pontiac, pulled up behind the Cutlass. A white Chevrolet then passed slowly by the officer’s vehicle, with the driver looking closely at the officers, one of whom was in uniform. The Chevrolet stopped next to the Cutlass and a conversation ensued between the occupant of the Chevrolet and the persons around the Cutlass. The officers were unable to positively ascertain whether the driver of the Cutlass was a participant in this conversation. The persons in and around the vehicles looked at the officers’ vehicle; then the Cutlass pulled off, followed by the Pontiac and the Chevrolet. The Pontiac appeared to be flashing its lights at the Cutlass. The officers pulled in behind the three vehicles, but did not turn on their blue light or siren. After following the three cars a short distance, the officers attempted to pass the Chevrolet and the Pontiac in order to stop the Cutlass. However, both the Pontiac and the Chevrolet were being driven in the center of the road and the drivers of those vehicles did not yield to the officers. At that point Investigator Lewis turned on the siren briefly.
The three cars ahead of the officers’ vehicle were proceeding very slowly. Officer Wicker stated that he got out of his vehicle and ran past the last car, shouting for the defendant to stop. When Wicker was approximately five feet from the Cutlass, he observed Lamar open his car door and drop something into the street. Wicker retrieved the items, a paper towel and a plastic box containing what appeared to him to be rock cocaine. Lamar appeared to lean over in the seat and his vehicle rear-ended a pickup truck parked on the side of the street. A back-up unit had arrived on the scene by this time.
Although the officers involved indicated that Lamar was not arrested for any offense at this time, one of the back-up officers testified that he “put the handcuffs on [Lamar].” “Generally and except in the most exceptional circumstances, a person must be considered under arrest once he has been handcuffed”. Bradley v. State, 494 So.2d 750, 759 (Ala.Cr.App.1985), affirmed, 494 So.2d 772 (Ala.1986), cert. denied, 480 U.S. 923, 107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). Because there was no further testimony by the officers as to what other actions they took at the time Lamar was handcuffed or immediately thereafter, this Court can conclude only that Lamar was arrested at the time he was handcuffed. Compare Darden v. State, 571 So.2d 1272 (Ala.Cr.App.), cert. denied, 571 So.2d 1280 (Ala.1990) (wherein this Court found that defendant was not arrested when handcuffed where defendant had voluntarily agreed to go to police station and officer explained that he was required to handcuff defendant in order to transport defendant in police car). However, contrary to Lamar’s assertions, it is clear that his arrest did not take place until sometime after his car had rear-ended another vehicle.
Lamar did not testify at the suppression hearing, but testified in his own defense at trial, asserting that the drugs belonged to the driver of the Pontiac, Curtis Fitzpatrick, and that Fitzpatrick was trying to throw the drugs to him. Lamar stated that he was not arrested at the scene for a drug offense, but was arrested for driving under the influence. He also testified that he had been at the Hideaway Club, where he consumed a beer, and that, just prior to being stopped by the officers, he had drunk *1385 “a cup of whiskey” which he had in his car.[2]
“Probable cause to arrest requires the ‘knowledge of facts and circumstances which are reasonably trustworthy and which would lead a prudent man to believe that the accused had committed the offense [for which he is arrested].’ Blanco v. State, 515 So.2d 115, 119 (Ala.Cr.App.1987). It is axiomatic that ‘[pjrobable cause deals with probabilities, not legal technicalities. It is grounded upon those practical, factual considerations of everyday life upon which reasonable and prudent men act. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1948).’ Carter v. State, 405 So.2d 957, 959 (Ala.Cr.App.), cert. denied, 405-So.2d 962 (Ala.1981). ‘Probable cause does not require an officer to compile an airtight case against a suspect.’ Williams v. State, 440 So.2d 1139, 1145 (Ala.Cr.App.1983). However, a mere suspicion on the part of the officer that the suspect committed a crime will not suffice. Moore v. State, 415 So.2d 1210, 1216 (Ala.Cr.App.), cert. denied, 459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610 (1982). Whether probable cause existed for a particular arrest ‘must be determined from the facts of each case.’ Waldrop v. State, 462 So.2d 1021, 1029 (Ala.Cr.App.1984), cert. denied, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1985).”
Dixon v. State [Ms.Cr.App. 3 Div. 414, September 21, 1990] (Ala.Cr.App.1990). Applying these principles to the present case, we find that, by the time Lamar was handcuffed, the officers had probable cause to arrest him for the offense of possession of cocaine.
In Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court established the concept of the investigatory stop based, not on probable cause, but on reasonable suspicion that criminal activity has occurred, is occurring, or is about to occur. See generally Caffie v. State, 516 So.2d 822, 825-26 (Ala.Cr.App.1986), cert. denied, 516 So.2d 831 (Ala.1987). The standard of reasonable suspicion is less rigorous than the standard of probable cause, see Fowler v. State, 453 So.2d 1089, 1091 (Ala.Cr.App.1984); Crawley v. State, 440 So.2d 1148, 1149 (Ala.Cr.App.1983), requiring only that the officers have “specific, particularized, and’articula-ble reasons indicating that the person may be involved in criminal activity,” Hickman v. State, 548 So.2d 1077, 1080 (Ala.Cr.App.1989). “To determine whether an officer’s suspicion of criminal activity was reasonable, a court must evaluate the totality of the circumstances as they appeared to the officer at the time of the stop.” United States v. Ocampo, 890 F.2d 1363, 1368 (7th Cir.1989). Information provided by a reliable informant can provide the reasonable suspicion required to justify a Terry stop. Adams v. Williams, 407 U.S. 143, 146-47, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612 (1972); State v. Calhoun, 502 So.2d 795, 805 (Ala.Cr.App.), affirmed in part, reversed in part on other grounds, 502 So.2d 808 (Ala.1986); State v. Kennedy, 107 Wash.2d 1, 7, 726 P.2d 445, 449 (1986). See State v. Calhoun, 502 So.2d 808, 813 (Ala.1986). See generally 3 W. LaFave Search and Seizure § 9.3(e) (2d ed. 1987).
In this case, the officers received information from a reliable informant that Lamar was in possession of drugs at a specified location and was in a specifically described vehicle. While the officers did not find Lamar at the specified location, compare Shute v. State, 469 So.2d 670, 672 (Ala.Cr.App.1984) (officers originally observed defendant in location indicated by reliable informant), and were unable to ascertain that Lamar was the occupant of the specifically described Cutlass, they did find the car, which the informant had specifically described, only a short distance from the location specified by the infor *1386 mant. At that time, they did not attempt to stop the Cutlass. As the trial court noted, “[Ijnstead of doing that, ... [the officers] sat there and watched and ... were seeking further corroboration and the activity that they then observed matched up with exactly the type of thing that would be going on if somebody was out on the street involved in drug activity at that time of morning.”
The activity observed by the officers included the following: (1) A second car pulled in behind the Cutlass. (2) Shortly thereafter, a Chevrolet passed slowly by the officers and stopped next to the Cutlass. The driver of the Chevrolet carefully looked at the officers. (3) A conversation then ensued between the driver of the Chevrolet and the persons around the Cutlass. (4) The persons being observed looked back towards the officers, and the three vehicles pulled off, with the Cutlass leading. (5) The Pontiac, which was immediately behind the Cutlass, appeared to be signalling the Cutlass by flashing its lights. (6) When the officers pulled in behind the Chevrolet and attempted to pass it and the Pontiac, the drivers of those vehicles prevented them from doing so. Considering the totality of the circumstances, we find that the information provided by the informant, coupled with the officers’ observations of the unusual activity occurring at 1:30 or 2:00 a.m., was sufficient, although only minimally so, to establish the reasonable suspicion necessary for a Terry investigative stop. See Caffie v. State, 516 So.2d at 826.
As the officers were attempting to effectuate the stop, Lamar opened his car door and dropped a small plastic box into the street. Lamar’s action in dropping the plastic box in a public place clearly constituted an abandonment of this item. See United States v. McLaughlin, 525 F.2d 517, 519-20 (9th Cir.1975), cert. denied, 427 U.S. 904, 96 S.Ct. 3190, 49 L.Ed.2d 1198 (1976) (marijuana deemed abandoned when thrown from window of truck when DEA agents were attempting to effectuate Terry stop). See also Jackson v. State, 654 P.2d 1057, 1058 (Okla.Cr.App.1982) (“an abandonment of the evidence occurred when the marijuana was flung from the fleeing vehicle”). When Wicker picked up the abandoned item and observed what appeared to him to be crack cocaine inside, the officers had sufficient facts within their knowledge to establish probable cause to arrest Lamar for possession of cocaine. United States v. Hollman, 541 F.2d 196, 198-99 (8th Cir.1976). See also Adams v. Williams, 407 U.S. at 148, 92 S.Ct. at 1924.
II
Lamar maintains that the cocaine and the drug analyst’s testimony regarding the cocaine should not have been admitted into evidence at trial because the State failed to establish an unbroken chain of custody for the cocaine.
Officer Wicker testified that he observed the defendant open his car door and drop something into the street. Wicker retrieved a paper towel and a plastic box containing what appeared to be crack cocaine and placed them in his shirt pocket. Five or ten minutes later, while still at the scene of the stop, Wicker gave these items to Isaac Lewis, an investigator with the Opp police department. He did not see what Lewis did with the box at that time. Wicker stated that he did not alter the items while they were in his possession.
Some 20 to 30 minutes later, after Wicker and Lewis had returned to the police station, Wicker observed Lewis place the plastic box and the paper towel in an evidence canister and seal it. Wicker, also observed Lewis place the sealed canister in a brown evidence envelope, which Lewis then sealed with red tape. Wicker confirmed that he “look[edj at the items there in the police department when everybody got back” and that the items did not “appear to have been alter[ed] in any way whatsoever.” Wicker also testified that Lewis filled out the back of the evidence envelope and then placed the envelope in the evidence locker. Sometime later, Wicker picked the envelope up from the crime lab in Enterprise.
Joe Saloom, the State’s drug analyst, testified that Lewis delivered the evidence en *1387 velope to him on December 27, 1988. The envelope was sealed when Saloom received it, as was the canister inside. There was no indication that either had been opened prior to the time that Saloom opened them. Inside the plastic box were several pieces of off-white crystalline material which Sa-loom determined to be cocaine. After performing his analysis, Saloom replaced the items in the evidence envelope and resealed it and then placed his initials upon the envelope. He later gave the envelope to Wicker.
At the time of the second trial, Isaac Lewis was no longer employed by the Opp Police Department and did not testify. (See Part III below.) The defendant argues that Lewis’ testimony was necessary to complete the chain of custody and, since Lewis did not testify, that there was a break in the chain.
Recently, in Moorman v. State, 574 So.2d 953 (Ala.Cr.App.1990), and Snowden v. State, 574 So.2d 960 (Ala.Cr.App.1990), this Court set forth at length the established legal principles applicable when addressing a chain-of-custody issue. We need not repeat those basic principles here, except to observe that “[t]he purpose for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence.” Ex parte Williams, 505 So.2d 1254, 1255 (Ala.1987), quoted in Ex parte Williams, 548 So.2d 518, 520 (Ala.1989). Although an extremely close question is presented in this case, we are of the opinion that the testimony of Wicker and Saloom was sufficient to establish “to a reasonable probability that the object[s were] in the same condition as, and not substantially different from, [their] condition at the commencement of the chain.” McCray v. State, 548 So.2d 573, 576 (Ala.Cr.App.1988).
Wicker initially took possession of the plastic box containing what appeared to be crack cocaine. Admittedly, these items were out of Wicker’s possession and, for aught that appears in the record, were out of his sight for some 20 to 30 minutes after he gave them to Lewis. Further, the items were not sealed in any way when Wicker gave them to Lewis. Compare Ex parte Williams, 548 So.2d at 520 (no break in chain where evidence was sealed in an envelope by one witness and delivered to subsequent witness in sealed condition even though intervening person did not testify); Moore v. State, 488 So.2d 27, 33 (Ala.Cr.App.1986) (same). However, when Wicker and Lewis returned to the station, Wicker looked at these items and ascertained that they did not appear to have been altered. He observed Lewis seal the items in a canister and then seal the canister in a brown envelope, which Lewis then placed in the evidence locker. The envelope and canister did not appear to have been opened when they were received from Lewis by the analyst sometime later. Clearly, the better practice would have been to offer Lewis’ testimony. Jackson v. State, 516 So.2d 726, 752 (Ala.Cr.App.1985), remanded on other grounds, 516 So.2d 768 (Ala.1986); Moore v. State, 488 So.2d at 33. However, where, as in this case, “each witness who does testify accounts for the integrity of the evidence and there is no contention that the evidence was contaminated or altered in any way, there is no error in the admission of the evidence even though one link in the chain does not testify.” Snowden v. State, 574 So.2d at 964.
We find this case distinguishable from Suttle v. State, 565 So.2d 1197 (Ala.Cr.App.1990). In Suttle, a blood sample was drawn from the defendant and given to a law enforcement officer who died prior to trial. We held that there was a break in the chain of custody because the State made “absolutely no effort ... to account for the whereabouts of the [blood] samples during the four days between the time they were taken by [a nurse] and the time they were received by [the toxicologist].” 565 So.2d at 1199. In the case at bar, the State substantially accounted for Lewis’ possession of the evidence through the testimony of Wicker. Cf. People v. Porter, 46 A.D.2d 307, 362 N.Y.S.2d 249 (1974) (no break in chain where nurse gave blood sample to officer and officer delivered sample to chemist, from whom he obtained a receipt, and chemist’s son testified as to results of *1388 test from the deceased chemist’s log book). Again, we observe that this is a close case; however, our review of the circumstances involved convinces us that, while there maybe a “weak link” in this chain, there is no “missing link.” See Ex parte Williams, 548 So.2d at 520.
As part of this issue, Lamar also asserts that Lewis removed the envelope containing the cocaine from the evidence locker on December 21, 1988, and that the envelope was unaccounted for for some six days, until its delivery to the lab on December 27. Contrary to Lamar’s assertion, there is nothing in the record proper to substantiate his claim that Lewis removed the envelope from the evidence locker on December 21. The envelope itself, which was admitted into evidence as part of State’s Exhibit 2, does not contain any notation from which we may ascertain the date on which it was removed from the evidence locker. The defendant has referred us to a document attached to his motion for new trial, asserting that it establishes that Lewis removed the envelope from the evidence locker on December 21. However, there does not appear to have been a hearing on the motion for new trial at which this document was identified and introduced. This document was neither identified nor offered at the trial in chief. Consequently, it cannot be considered as evidence by this Court. See Sparks v. State, 450 So.2d 188, 193 (Ala.Cr.App.1984) (“Where no evidence is taken is support of a motion for new trial, a reviewing court can consider only the record of the trial in chief”). Further, the motion for new trial was not verified and therefore cannot be considered evidence. See Blount v. State, 557 So.2d 1333, 1335 (Ala.Cr.App.1989); Smith v. State, 364 So.2d 1, 14 (Ala.Cr.App.1979).
Ill
Lamar asserts that he should have been permitted to introduce the testimony of former Opp police officer Isaac Lewis which was given at his first trial. As noted in Part II above, Lewis was no longer employed by the Opp Police Department at the time of Lamar’s second trial and was not called as a witness by the State. Defense counsel offered Lewis’ prior testimony immediately after the State rested.
It is well settled that
“[t]he testimony of a witness, in a former trial or action, given (1) under oath, (2) before a tribunal or officer having by law the authority to take testimony and legally requiring an opportunity for cross-examination, (3) under circumstances affording the party against whom the witness was offered an opportunity to test his credibility by cross-examination and (4) given in a litigation in which the issues and parties were substantially the same as in the present cause, is receivable in evidence in the present trial (5) when the personal attendance of the witness to testify in the present trial is not feasible.”
C. Gamble, McElroy’s Alabama Evidence § 245.07(1) (3d ed. 1977) (emphasis added). Assuming, without deciding, that the first four requirements were met in this case, it is readily apparent that the fifth requirement was not met.
The party seeking to introduce the prior testimony must clearly demonstrate the unavailability of the witness and the reason therefor. Williams v. Calloway, 281 Ala. 249, 251-52, 201 So.2d 506, 508 (1967). The fact that a witness “has left the state permanently or for such an indefinite time that his return is contingent and uncertain” is a sufficient reason to warrant the admission of prior testimony. Id. However, the witness’s mere temporary absence from the state is not sufficient to warrant such admission. Liverpool & London & Globe Ins. Co. v. Dickenson, 244 Ala. 381, 383, 13 So.2d 570, 572 (1943); Rouse v. State, 548 So.2d 643, 646 (Ala.Cr.App.1989).
In this case, defense counsel stated that she did not realize until two days prior to the second trial that the State had not subpoenaed Lewis. She attempted to subpoena Lewis, but was unable to do so. She stated that she then called Lewis’ home in Ariton, Alabama, and spoke with his wife, who informed her that Lewis was in Ken *1389 tucky. Defense counsel acknowledged that she had made no previous attempt to contact Lewis in the month between the first trial and the instant trial. We note that at the suppression hearing, which was held immediately prior to Lamar’s first trial and which is a part of the record before this Court, Lewis testified that he was then employed by Lewis Family Trucking Company. There was absolutely no evidence that Lewis had left the state permanently, and it is fair to conclude that he had simply driven to Kentucky as part of his employment. We find this case indistinguishable from Rouse v. State, in which we held that the State failed to show that its medical examiner was unavailable for purposes of introducing his prior testimony where he was merely temporarily out of the state on vacation with his family “and no real effort was made by the [Sjtate to locate the witness and get him back for trial.” 548 So.2d at 646.
Whether the party seeking the admission of the prior testimony has produced sufficient proof of the “unavailability of an absent witness is addressed to the sound discretion of the trial judge.” Nolen v. State, 469 So.2d 1326, 1328 (Ala.Cr.App.1985); Matkins v. State, 521 So.2d 1040, 1042 (Ala.Cr.App.1987). The trial judge in this case specifically ruled that Lamar had not sufficiently shown the unavailability of Lewis so as to warrant the admission of Lewis’ prior testimony. We find no abuse of discretion in this action.
IV
Immediately after the trial court refused to admit Lewis’ prior testimony, defense counsel sought to introduce a certified copy of the affidavit prepared by Lewis to obtain the arrest warrant for Lamar. Her purpose in offering this affidavit was not stated.
There was no error in the trial court’s refusal to admit the affidavit:
“As a general rule, an affidavit is not admissible for the purpose of proving the truth of the matter stated in it because the affidavit is hearsay since the declar-ant is not present and not subject to cross-examination by the opposing party.”
McElroy’s Alabama Evidence § 260.01. This general rule applies to affidavits given in support of a warrant. See Loggins v. State, 52 Ala.App. 204, 206, 290 So.2d 665, 667 (1974).
V
During cross-examination of the police officers, defense counsel sought to ask whether any one else present at the scene was charged with a drug offense. The prosecutor objected to this question on the grounds that it was irrelevant. When the trial court sustained this objection, defense counsel did not respond in any way, but simply went into another line of questioning. Lamar now contends on appeal that this question was relevant to his defense that the driver of the Pontiac, Curtis Fitzpatrick, was attempting to throw the box containing the cocaine to him.
“Even though one accused of a crime may show his innocence by proof of the guilt of another, provided the evidence relates to the res gestae of the offense, such evidence must exonerate the accused. As stated in Blevins v. State, 51 Ala.App. 214, 283 So.2d 664 (1973):
“ ‘ “While it is always proper and relevant for accused to show that someone else committed the crime without his aid or participation, the admissibility of evidence offered to establish such fact depends on the circumstances of the case as well as the character of the evidence offered; but in general competent evidence which tends to prove that another committed the crime for which the accused is being tried is admissible if it is inconsistent with the guilt of the accused.” (Emphasis supplied.)’ ”
Allen v. State, 382 So.2d 1147, 1156 (Ala.Cr.App.), cert. denied, 382 So.2d 1158 (Ala.1980), quoted in Thomas v. State, 539 So.2d 375, 395 (Ala.Cr.App.), affirmed, 539 So.2d 399 (Ala.1988), cert. denied, 491 U.S. 910, 109 S.Ct. 3201, 105 L.Ed.2d 709 (1989).
Whether Fitzpatrick was also arrested that night for a drug offense clearly would *1390 not exonerate Lamar as “[t]he crime of possession of a controlled substance can be jointly committed.” Wesenberg v. State, 504 So.2d 328, 334 (Ala.Cr.App.1986). Moreover, at the time the police officers were being cross-examined, Lamar had not presented his defense and there was no attempt to demonstrate to the trial court that this question was relevant to that defense. “Where the relevancy is not apparent in the question itself, the trial court will not be put in error for sustaining an objection unless the relevancy is made to appear.” Morris v. State, 465 So.2d 1173, 1178 (Ala.Cr.App.1984), reversed on other grounds, 465 So.2d 1180 (Ala.1985).
For the reasons stated above, the judgment of the Covington Circuit Court is affirmed.
AFFIRMED.
All Judges concur.

. In response to defense counsel’s questions re* garding the informant’s prior “track record,” Lewis testified that he had previously received information from this informant which had led to several arrests. Neither defense counsel nor the prosecutor questioned Lewis as to how the informant came by the information concerning the defendant. However, Lamar did not contest the reliability of the informant on this basis at trial, nor does he raise this matter in this appeal. In any event, the informant provided "sufficient information” from which it can be "reasonably inferred] that the informant had gained his information in a reliable way.” Moynes v. State, 568 So.2d 392, 394 (Ala.Cr.App.1990).

. Although the State did not introduce any evidence on the matter at trial, we observe, in view of Lamar’s own testimony and the fact that he rear-ended another vehicle parked on the side of the road, that there may well have been probable cause for his arrest for driving under the influence. In any event, Lamar did not contend at trial and does not contend here that there was no probable cause for his arrest for driving under the influence, which is the only offense he himself stated that he was arrested for that night.